1  LAURA E. FANNON (SBN 111500)
   KELLY, HERLIHY & KLEIN LLP
2  44 Montgomery Street, Suite 2500
   San Francisco, CA 94104-4798
3  Tel.: (415) 951-0535
   Fax: (415) 391-7808

4

5  Attorneys for Defendants
   HARTFORD LIFE AND ACCIDENT INSURANCE
6  COMPANY, LONG-TERM DISABILITY AND LIFE PLAN
   FOR EMPLOYEES OF MINNESOTA METHANE LLC

7

8                 UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11  MARK A. EPPLER,                    )  Case No.: C07-04696 WHA ADR
                                       )
12           Plaintiff,                )  **NOTICE, MOTION, AND**
                                       )  **MEMORANDUM OF POINTS AND**
13      vs.                            )  **AUTHORITIES IN SUPPORT OF**
                                       )  **MOTION FOR SUMMARY**
14  HARTFORD LIFE AND ACCIDENT         )  **JUDGMENT/ADJUDICATION RE**
    INSURANCE COMPANY; LONG-TERM       )  **EXHAUSTION OF ADMINISTRATIVE**
15  DISABILITY AND LIFE PLAN FOR       )  **REMEDIES**
    EMPLOYEES OF MINNESOTA             )
16  METHANE LLC,                       )  Date: February 7, 2008
                                       )  Time: 8:00 a.m.
17           Defendants.               )  Courtrooom: 9
                                       )
18  _____       Hon. William H. Alsup

19                                        Documents Attached:
                                          1. Anderson Declaration;
20                                        2. Swanson Declaration;
                                          3. Fannon Declaration;
21                                        4. Proposed Order.

22

23

24

25

26

27

28

**NOTICE AND MOTION**

TO PLAINTIFF MARK A. EPPLER AND TO HIS ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that February 7, 2008, at 8:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, the Honorable William H. Alsup will hear the instant motion of defendants Hartford Life and Accident Insurance Company ("The Hartford") and Long Term Disability and Life Plan for Employees of Minnesota Methane LLC ("the Plan") (jointly, "defendants") for summary judgment or partial summary judgment/summary adjudication of issues, pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motion is made on the ground that there is no genuine issue as to any material fact, and defendants are entitled to judgment as a matter of law, in that plaintiff failed to exhaust his administrative remedies before filing this suit for disability benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. section 1001 et seq. Accordingly, defendants seek a judgment in their favor that this entire action is barred. The motion is based upon this notice, motion, and memorandum of points and authorities, as well as the declarations of Todd Anderson, Karen Swanson, and Laura E. Fannon and the proposed order granting the motion; as well as upon all pleadings on file in this action.

KELLY, HERLIHY & KLEIN LLP

Date: January 3, 2008                    By _Laura E. Fannon_

Laura E. Fannon
Attorneys for Defendants
HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY and LONG-
TERM DISABILITY AND LIFE PLAN FOR
EMPLOYEES OF MINNESOTA METHANE LLC

-1-

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

**A.    Overview.**

Plaintiff brings this action for long-term disability benefits under a group disability insurance policy issued to Minnesota Methane LLC as part of an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. section 1001 et seq. After plaintiff stopped working as a result of sleep apnea and, later, orthopedic problems, The Hartford paid plaintiff benefits for the full two-year "own occupation" period of the policy. After that, plaintiff was required to prove that he was disabled from "any occupation," as defined in the policy. On April 28, 2006, having determined, based upon the opinions of plaintiff's own physicians, that plaintiff did not satisfy the more stringent disability definition, The Hartford terminated plaintiff's benefits. In this letter, The Hartford notified plaintiff, in accordance with the provisions of the policy, that he had 180 days from the date of denial to appeal the decision. The 180-day period expired on October 25, 2006.

On October 3, 2006, plaintiff's present attorney, Julian Baum, Esq., advised The Hartford by letter that plaintiff wished to appeal, but that, to permit him to do so, he was requesting various documents listed in the letter. The Hartford sent Mr. Baum the administrative record and the policy on October 23, 2006. The Hartford voluntarily extended the appeal period to December 2006. However, The Hartford never received any appeal or any further correspondence from plaintiff. In December 2006, The Hartford closed its file.

Plaintiff filed this action on September 12, 2007. After the litigation was in progress, Mr. Baum asserted that he had sent a medical report to The Hartford to support plaintiff's appeal. Upon request, he provided to defense counsel a copy of the medical report (bearing a date of July 7, 2007) and its cover letter (bearing a date of August 2, 2007), both addressed to The Hartford's Minneapolis office. On their faces, both documents were obviously generated many months after the expiration of the 180-day period for appeal. Later, while exchanging drafts of the Joint Case Management Statement, Mr. Baum asserted that he had sent further

1  correspondence to The Hartford in November 2006. The Hartford, however, never received this

2  correspondence or any correspondence after Mr. Baum's initial October 3, 2006 letter.

3      A factual dispute may exist concerning whether the alleged November 30, 2006 letter

4  and the August 2, 2007 letter were ever sent; however, this issue does not concern a material

5  fact and does not preclude summary judgment in favor of The Hartford. First, the proffered

6  medical report, dated July 7, 2007, was generated and sent to The Hartford many months after

7  the expiration of the 180-day appeal window and shortly before plaintiff filed this action.

8  Second, The Hartford never received either document prior to the commencement of this

9  lawsuit and never had the opportunity to conduct its administrative review. Thus, plaintiff

10  failed to satisfy the precondition in the policy for pursuit of litigation on the claim: "You must

11  complete this claim appeal process before you file an action in court." Consequently, the

12  undisputed, and indisputable, facts establish that plaintiff failed to exhaust his administrative

13  remedies and thereby waived the right to pursue his claims against defendants.

14

15  **B.     Facts Pertinent to This Motion.**[1]

16      **1.     Facts Preceding the Filing of This Action.**

17      Plaintiff was employed by Minnesota Methane LLC and was a participant in the Plan,

18  which was an employee welfare benefit plan governed by ERISA. Complaint, ¶¶ 3-4. The plan

19  documents designated The Hartford as the claims fiduciary for the Plan and also accorded it

20  discretionary authority to determine eligibility for benefits and to construe and interpret all

21  terms and provisions of the policy. Anderson Decl., Ex. 1, Policy, at E680. The Plan coverages

22  included, among others, short and long term disability benefits. Ex. 1 at E628-38, E639-58.

23      Plaintiff ceased working as of October 30, 2003, and made a claim under the plan for

24  short term disability benefits. Anderson Decl., Ex. 2, Claim file, at E535-540. His claim for

25  short term disability benefits was approved and paid through the end of the term. Ex. 2 at E533-

26  534. His claim for long term disability benefits was approved and paid under the "own

27

28  [1]     This factual recitation does not include discussion of the merits of the claim or of any
aspect of claim handling not directly relevant to the defense of exhaustion of remedies.

-3-

occupation" definition of disability contained in the policy, which applied for the first 24 months benefits were paid. Ex. 1 at E655; Ex. 2 at E364-365.

Before the expiration of the 24-month own occupation period, The Hartford conducted an investigation to determine whether plaintiff satisfied the more stringent "any occupation" definition of disability. Ex. 2, E364-365. Upon completing its investigation, the details of which are not material to the exhaustion defense, The Hartford concluded that plaintiff did not satisfy the policy definition of disability applicable after 24 months and sent plaintiff a letter explaining in great detail the applicable policy provisions; the information relied upon in arriving at the claim decision; plaintiff's self-described symptoms and limitations as compared with his observed functioning; his medical history and communications with his medical providers; and his employment background and occupations for which he appeared to be qualified, taking into account *inter alia* his functioning, salary requirements, and experience. The letter also explained his right under ERISA to appeal the claim decision as long as he did so within 180 days from receipt of the denial letter. Ex. 2 at E165-172. He was directed to send his appeal letter to the Claim Appeal Unit in Hartford, Connecticut. Ex. 2 at E172. Even if five days were added to the date of denial to allow time for receipt of the denial letter, the 185th day after receipt of the April 28, 2006 denial letter would have fallen on October 30, 2006.

In accordance with 29 C.F.R. 2560.503-1(h), the policy contained the following provision relating to the time for appeal:

Appealing Denials of Claims for Benefits

On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. *You must complete this claim appeal process before you file an action in court.* Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 180 days from the date you received your claim denial. . . .

Ex. 1 at E680 (emphasis added).

On October 3, 2006, The Hartford received a faxed letter from plaintiff's present attorney, Julian Baum, Esq., announcing his representation of plaintiff. The letter further stated that "Mr. Eppler wishes to appeal The Hartford's decision" and that, "[i]n order to permit him to

-4-

1   do so," certain documents were requested. Ex. 2 at E162-163. This letter was sent to The

2   Hartford's Minneapolis office, which was handling the claim. *Id.* On October 9, 2006, The

3   Hartford acknowledged Mr. Baum's letter stating his intent to appeal and requesting documents.

4   The October 9th letter again instructed Mr. Baum to send the appeal to the Disability Claim

5   Appeal Unit in Hartford, Connecticut. Ex. 2 at E133.C. He was notified that he would have an

6   extension of time to submit the appeal, until December 4, 2006. *Id.* On October 23, 2006, The

7   Hartford sent Mr. Baum a copy of the complete administrative record, including the claim file, a

8   copy of the policy booklet-certificate, a surveillance CD, and the Summary Detail Report

9   (referred to internally as the K6 Comments, a computerized claim log). Ex. 2 at E133.

10          The Hartford did not receive any appeal or any further correspondence from Mr. Baum.

11  Ex. 2 at E001-002; Swanson Declaration, ¶ 6; Anderson Declaration, ¶¶ 6-7. The Summary

12  Detail Report for December 4, 2006, the deadline for submission of the appeal, states, "took off

13  diary. appeal was not submitted." Mail delivered by the Post Office to the Minneapolis

14  Disability Claim Office was processed in an unbroken chain of custody from the Post Office

15  mail bins to the claim examiner's desk. The claim examiner's receipt of any additional

16  materials from plaintiff or his counsel would have been reflected in the Summary Detail Report

17  (K6 Comments). Anderson Decl., ¶ 3. The entries do not reflect the receipt of anything further

18  from plaintiff or his attorney, at either the Minneapolis or the Hartford office,[2] until the

19  complaint in this action was served in October 2007. Ex. 2 at E001. All locations in the

20  Minneapolis Disability Claim Office where any appeal-related correspondence pertaining to

21  plaintiff's claim could have been delivered or stored were searched, and nothing was found.

22  Anderson Decl., ¶ 7. The Hartford closed its file in December 2006, upon expiration of the

23  extended period for appeal. *Id.* at E001-002.

24          **2.    Post-litigation Facts.**

25          After this litigation was underway, plaintiff's attorney advised defendants' attorney that

26  he had submitted a report to support the appeal. Fannon Decl., ¶ 2. Upon request, his office

27  _____

28  [2]    Plaintiff does not contend that he sent any correspondence to any office except the
        Minneapolis Disability Claim Office. See Fannon Decl., Exs. 3-5.

-5-

1   forwarded a copy of a medical report concerning plaintiff to defendants' counsel on November
2   20, 2007. Fannon Decl., ¶ 2 & Ex. 3. On November 27, 2007, Mr. Baum separately e-mailed
3   counsel for defendants a copy of the cover letter that he reported that he had sent to The
4   Hartford with the medical report. Fannon Decl., ¶ 2 & Ex. 4. The medical report was dated
5   July 7, 2007. Fannon Decl., Ex. 3. The cover letter was dated August 2, 2007. Fannon Decl.,
6   Ex. 4. The Hartford never received this letter or its enclosure, as noted above.[3]

7     Thereafter, in the Joint Case Management Statement filed December 13, 2007, plaintiff
8   asserted for the first time that his attorney had sent another letter to The Hartford in November
9   2006. Plaintiff subsequently produced a copy of this letter with his Initial Disclosures. Fannon
10  Decl., Ex. 5. As noted above, The Hartford never received this letter. Anderson Decl., ¶¶ 6-7.

12  **C. Summary of Argument.**

13    Many policy considerations underlie the requirement in the ERISA context that the
14  claimant have exhausted his or her administrative remedies under the plan before filing suit.
15  Not the least of these considerations are the reduction of litigation in the courts and the
16  minimizing of costs to all concerned. Plaintiff did not complete the administrative process.
17  After sending his lawyer the claim file and the policy, as requested, The Hartford never received
18  anything further and therefore did not conduct its appeal process. Only after the litigation began
19  did plaintiff assert that an appeal had been submitted. Whether or not this was the case – and
20  The Hartford has made vigorous efforts to determine whether an appeal was received and has
21  determined that none was – it is indisputable that The Hartford never had an opportunity to

---

25  [3] Unlike Mr. Baum's October 3, 2006 letter, neither the November 30, 2006 letter nor the
26  August 2, 2007 letter recites on its face that it also was sent by facsimile transmission.
    Nevertheless, The Hartford has confirmed that the August 2, 2007 letter was not received
27  by fax and is obtaining the records from storage that will disclose whether the November
    30, 2006 letter was received by fax. A supplemental declaration, to be filed by the
28  beginning of next week, will disclose the results of the search through these stored
    records. Swanson Decl., ¶ 6.

1  process the appeal.  Because plaintiff failed to pursue his administrative remedies, under Ninth

2  Circuit law this lawsuit is barred and should be dismissed with prejudice.[4]

3

4                                    **ARGUMENT**

5  **AS PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES**

6  **WITHIN THE TIME PERMITTED BY THE POLICY, THIS ACTION IS BARRED**

7          One level of administrative review was provided by the policy, and required by 29

8  C.F.R. section 2560.503-1(h), following an adverse claim decision.  Both the policy and the

9  letter terminating plaintiff's benefits advised him of the 180-day time limit for seeking review

10  of the April 28, 2006 decision.  Anderson Decl., Ex. 2, E680-81.  Although ERISA itself does

11  not require that a claimant exhaust his or her administrative remedies before filing suit, Ninth

12  Circuit law has enforced this requirement for almost three decades.  *See Amato v. Bernard,* 618

13  F.2d 559, 566-68 (9th Cir. 1980).  The rationale for the exhaustion doctrine was explained in

14  *Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust,* 50 F.3d 1478, 1483 (9th

15  Cir. 1995), citing *Amato:*

16          Although not explicitly set out in the statute, the exhaustion doctrine is consistent with
17          ERISA's background, structure and legislative history and serves several important
            policy considerations, including the reduction of frivolous litigation, the promotion of
18          consistent treatment of claims, the provision of a nonadversarial method of claims
            settlement, the minimization of costs of claim settlement and a proper reliance on
19          administrative expertise.  *Id.* at 566-68.

20  Consequently, the court in *Diaz* added, "'the federal courts have the authority to enforce the

21  exhaustion requirement in suits under ERISA, and [] as a matter of sound policy they should

22  usually do so.' *Id.* at 568."

23          *Diaz* involved a denied claim for medical expenses.  The claimant was a Spanish-

24  speaking farm worker who received notice that medical treatment for his daughter, who had

25  begun treatment for leukemia during a gap in coverage, would not be covered.  He was given

26

27  ─────────────
    [4]     Defendants submit that dismissal or a judgment in their favor is supported by Ninth
28          Circuit law; however, if the court declines to award judgment to defendants, the claim
            should be remanded to the claim administrator to complete the administrative process.

                                        -7-
─────────────────────────────────────────────────────────────────

1    the SPD in English and Spanish, but the denial letter was in English except for notice in Spanish

2    of his appeal rights and of the existence of a Spanish-language "800" number for further

3    information. Diaz gleaned from the appeal information that his claim had been denied, but he

4    did not submit a timely appeal. The Ninth Circuit held that the action properly was dismissed.

5    Specifically, it held that the Plan's internal appeal procedures were adequate, that Diaz had had

6    the opportunity to call the 800 number for more information but had not done so, and that the

7    exhaustion defense therefore barred the action. 50 F.3d 1478.

8        In contrast to Mr. Diaz, who was an uneducated farm worker who did not speak English,

9    plaintiff in this case was provided with detailed information, in his own language, concerning

10   the plan provisions and bases for the claim decision; and he engaged competent ERISA counsel

11   to assist him before his time to appeal had expired. Nevertheless, he allowed the time for

12   appeal to expire without pursuing review of the claim denial.

13       Only two exceptions to the exhaustion requirement have been articulated (absent waiver

14   of the defense by the defendant): inadequacy of the appeal procedures and remedy afforded, or

15   futility. Neither applies here. With respect to the adequacy of the procedures, those described

16   in the policy and in the denial letter parallel those required by the ERISA regulations. *See* 29

17   C.F.R. section 2560.503-1(h). The Hartford's notice to plaintiff in the denial letter of these

18   procedures was sufficient notice under ERISA. *Cf. Chappel v. Laboratory Corp. of America,*

19   232 F.3d 719, 726-27 (9th Cir. 2000) (notice of arbitration clause and procedures in denial letter

20   would have been sufficient notice).[5]

21       Nor is there any indication that appeal would have been futile. As in *Diaz,* the

22   insurer/plan never had an opportunity to conduct its administrative review, as the claimant never

23   _____

24   [5]    "We therefore hold that Lab Corp, as Plan administrator, breached its fiduciary duty to
        Chappel if, as Chappel alleges, it adopted a mandatory arbitration clause that set a 60-day
25      time limit in which to demand arbitration and then relied, for notice of the clause and its
        terms, on a summary plan description contained in an employment manual. It would
26      have been a simple matter, when the Plan administrator sent a letter to Chappel notifying
        him of its denial of his appeal, for the administrator to have notified Chappel in that same
27      letter of the arbitration clause and its required procedures. If the administrator had done
        that, it would have fulfilled its fiduciary duty to Chappel." 232 F.3d at 726-27.
28

-8-

1   submitted an appeal. Mere speculation about likely outcome is insufficient to invoke the futility

2   exception. *See Diaz*, 50 F.3d at 1485 ("[S]uch bare assertions of futility are insufficient to bring

3   a claim within the futility exception, which is designed to avoid the need to pursue an

4   administrative review that is demonstrably doomed to fail") (citations omitted).

5         Plaintiff's counsel has posited two documents sent but not processed by The Hartford.

6   One was a November 30, 2006 letter to "The Hartford," and the other was a cover letter dated

7   August 2, 2007 enclosing a July 7, 2007 report of a psychiatric examination. The Hartford has

8   provided two declarations establishing that these documents – which were provided to

9   defendants' attorney only after the commencement of this litigation – were never received at the

10  office to which they allegedly were sent. The second one was many months late even if receipt

11  by The Hartford had been established.[6] In either event, and even assuming receipt of the

12  correspondence, it is clear that plaintiff did not pursue the appeal process to completion. Doing

13  so is a precondition to suit under the plan.

                                **CONCLUSION**

15        Judgment in favor of defendants is appropriate. However, should the court decline to

16  dismiss this action outright, defendants request that the court: (a) stay or dismiss this action

17  without prejudice; (b) require plaintiff to exhaust his administrative remedies; and (b) remand

18  the matter to The Hartford to conduct its administrative review of the claim.

19                           KELLY, HERLIHY & KLEIN LLP

20

21  Date: January 3, 2008          By _Laura E. Fannon_

22                                    Laura E. Fannon
                                      Attorneys for Defendants
23                                    HARTFORD LIFE AND ACCIDENT
                                      INSURANCE COMPANY and LONG-
24                                    TERM DISABILITY AND LIFE PLAN FOR
                                      EMPLOYEES OF MINNESOTA METHANE LLC

25

26  _____

27  [6]    The "notice-prejudice" rule that permits late filing of claims unless the claim fiduciary
       can show prejudice has not, to defendants' knowledge, been applied by the courts in this
28     circuit to extend the appeal of a first-level claim denial. Were such the case, the appeal
       windows for which the ERISA claim regulations provide would be meaningless.