**EXHIBIT 2**

Report: E401773R
Office: Minneapolis Claim Office
Date Of Report:10/23/2007

The Hartford - Benefit Management Services
Comments: Summary Detail Report
Date Range: 02/19/2004 - 10/22/2007
For business Role: Examiner
Claimant: Mark Eppler 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
Case: Minnesota Methane Llc
Claim Owner: Katie E Johnson Role: Examiner Office: Minneapolis

Page 1

10/22/2007 11:58:10 a.m. ET Todd E Anderson Examiner Minneapolis      Sign off required: N
Recommendation/Plan: Examiner Claim Management Plan

REDACTED                REDACTED                REDACTED

10/18/2007 11:52:26 a.m. ET Katie E Johnson Examiner Minneapolis      Call To/From: Attorney
Type of Call: Incoming      Date of Call: 10/18/2007                  Conversation with:
Name: Seyfarth Shaw
Phone: (916) 498-7033      Extension:      Fax Number:

REDACTED                REDACTED                REDACTED

        Rec'd Complaint via e-mail forwarded to TEA

10/09/2007 02:30:29 p.m. ET Katie E Johnson Examiner Minneapolis      Sign off required: N
Recommendation/Plan: Examiner Claim Management Plan

10/09/2007 01:53:31 p.m. ET Katie E Johnson Examiner Minneapolis      Call To/From: Other
Type of Call: Incoming      Date of Call: 10/09/2007                  Conversation with:
Name: Greg Albin
Phone:      Extension:      Fax Number:

        t/c from broker on behalf of ER - EE has filed a complaint dt termination of benefits and asked who he should send that
        to.  Said he can send it to me and I would forward on to the correct contact.  He ack'd.  Provided e-mail address.

05/29/2007 08:11:22 a.m. ET Corey D Johnson Examiner Minneapolis      Sign off required: N
Recommendation/Plan: Examiner Claim Management Plan

        rec'd notification that ovp was referred to law firm. put to file. $7,920.75

12/04/2006 08:08:53 a.m. ET Tina M Sekorski Examiner Simsbury
Type: Miscellaneous

E 001

Report: E401773R                          The Hartford - Benefit Management Services                          Page 2
Office: Minneapolis Claim Office                   Comments: Summary Detail Report
Date Of Report:10/23/2007                   Date Range: 02/19/2004 - 10/22/2007
                                                 For business Role: Examiner
                                              Claimant: Mark Eppler 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
                                                 Case: Minnesota Methane Llc
                     Claim Owner: Katie E Johnson Role: Examiner Office: Minneapolis


          took off diary.  appeal was not submitted


10/23/2006 11:45:37 a.m. ET Timothy J Scully Examiner Minneapolis               Sign off required: N
Recommendation/Plan: Investigative Analyst Plan

     O: rec'd ltr from Law Offices of Baum & Weems, Atty Julian M. Baum.  Ltr requesting information as the claimant wishes
     to appeal the claims decision. Atty asked for a copy of the claimant's file as well as additional information not part
     of the claim administrative record
     A: Pursuant to ERISA the claimant is entitled to the complete administrative record which included a copy of the claim
     file, policy, Summary detail report, investigative detail, and surveillance information.
     P: sent a copy of the complete administrative record to atty.


10/18/2006 11:05:38 a.m. ET Corey D Johnson Examiner Minneapolis                Sign off required: N
Recommendation/Plan: Examiner Claim Management Plan

     A/P:rec'd copied file forwarded onto siu to handle. TJS


10/10/2006 02:29:35 p.m. ET Corey D Johnson Examiner Minneapolis                Sign off required: N
Recommendation/Plan: Examiner Claim Management Plan

     A/P: will send copy to be filed. f/u 1 week.


10/09/2006 03:03:26 p.m. ET Tina M Sekorski Examiner Simsbury
Type: Miscellaneous

     Rec'd a letter of intent to appeal.  Will grant extension ending on 12/4/06 for atty to submit appeal.  will send acknow
     letter


01/04/2006 01:19:21 p.m. ET Corey D Johnson Examiner Minneapolis                Sign off required: N
Recommendation/Plan: Examiner Claim Management Plan

     rec'd appeal from Baum & Weems attorney office.

     A: will forward appeal onto HO
     P: f/u 15 days.


08/14/2006 01:23:58 p.m. ET Corey D Johnson Examiner Minneapolis
Type of Call: Outgoing        Date of Call: 08/14/2006                  Call To/From: Employer
Name: Minnesota Methane Llc                                            Conversation with:

E 002



### THE HARTFORD

October 23, 2006

Law offices of Baum & Weems
Attn: Julian M. Baum
9 Tenaya Lane
Novato, CA 94947

RE:              Mark Eppler
Policy Holder: Minnesota Methane LLC
Policy No:      GLT302812

Dear Attorney Baum:

We are writing to you in response to your letter to us dated October 3, 2006.

Pursuant to The Employee Retirement Income Security Act of 1974 (ERISA), you are entitled to receive a copy of the complete administrative record. Enclosed you will find a complete copy of your client's claim file as well as a copy of the Booklet-certificate, the surveillance, and the Summary Detail Report. The enclosed comprises the complete administrative record.

Any additional plan descriptions or originals of the policy must be obtained through the policyholder.

Please contact me if you have any questions at 800-752-9713 x 66726.

Sincerely,

*Timothy J. Scully*

Timothy J. Scully
Benefit Management Services
Hartford Life and Accident Insurance Company

The Hartford
Benefit Management Services
3800 American Blvd West
Bloomington MN 55431
Phone (800) 752-9713
Fax (952) 656-6227

E 133

October 9, 2006

Julian Baum
Law Offices of Baum and Weems
9 Tenaya Lane
Novato, CA  94047

RE:    Minnesota Methane, LLC
       Mark Eppler

Dear Attorney Baum:

We have received your letter indicating that you intend to appeal the decision that was made on your client's claim for Long Term Disability (LTD) benefits.

You have requested copies of documents from the claim file.   The request is being forwarded to our Minneapolis Claim Office for a response.

When your appeal is complete please send it to the following address:

        Disability Claim Appeal Unit
        Benefit Management Services – Floor B2-E
        Hartford Life Insurance Company
        P.O. Box 2999
        Hartford, CT  06104-2999

Please note that the complete appeal must be submitted to us by December 4, 2006.


Appeal Unit
Benefit Management Services
Hartford Life and Accident Insurance Co


E 133.C

·10/03/2006  20:32    4158923096    BAUM&WEEMS    PAGE  01

LAW OFFICES OF
# BAUM & WEEMS
9 TENAYA LANE
NOVATO, CALIFORNIA 94947
WRITER'S DIRECT TELEPHONE: (415) 892-3152
WRITER'S DIRECT FAX: (415) 892-3096

October 3, 2006

*By Facsimile:  877-454-7217*
*And U.S. Mail*

The Hartford
Benefit Management Services
Minneapolis Disability Claim Office
3800 American Blvd. W., Ste 600
Bloomington, MN 55431

Re:        Claimant:          Mark A. Eppler
           Policy Holder:     Minnesota Methane LLC
           Policy Number      GLT302812

Dear Sir or Madam:

This office represents Mark A. Eppler in connection with The Hartford's termination of Mr. Eppler's disability insurance benefits. We have an incomplete copy of The Hartford's letter to Mr. Eppler dated April 28, 2006.

Mr. Eppler wishes to appeal The Hartford's decision. In order to permit him to do so, and to respond adequately to The Hartford's decision, we respectfully request that you provide to us the following documents and information:

- A complete copy of The Hartford's claim file pertaining to Mr. Eppler;

- A complete copy of all other documentation (whether maintained in hard copy or computer medium) pertaining to or referring to Mr. Eppler's disability claim, whether or not it is deemed to be part of the "claim file;"

- a copy of all internal rules, guidelines, protocols, or other similar criteria which were relied upon in the decision to terminate Mr. Eppler's disability benefits;

- A copy of the curriculum vitae of each health care professional whose advice was obtained, in connection with Mr. Eppler's disability insurance claim, without regard to whether the advice was relied upon in making decisions regarding the claim;

- Each document which was submitted, considered, or generated in the course of making the decision to terminate Mr. Eppler's disability benefits, without regard to whether they were relied upon in the decision to terminate his disability benefits, including but not limited to The Hartford's claims manual(s);

**E  162**

· 10/03/2006  20:32    4158923096        BAUM&WEEME'                              PAGE  02

The Hartford                                                        Page 2 of 2
October 3, 2006

- All documents which constitute a statement of policy or guidance with respect to claim determinations for claimants diagnosed with medical conditions such as Mr. Eppler's, without regard to whether such documents were relied upon in making the determination to terminate Mr. Eppler's disability benefits;

- All documents which demonstrate The Hartford's processes and safeguards designed to ensure and to verify that disability benefit claims determinations are made in accordance with the terms of the Summary Plan Description for Mr. Eppler's disability insurance coverage, and that those terms have been applied consistently with respect to similarly situated claimants;

- Copies of the Summary Plan Description(s) applicable to Mr. Eppler's disability benefits claim;

- Copies of the insurance policy and the Certificate(s) of Insurance applicable to Mr. Eppler's disability benefits claim; and

- If any documents specified above are withheld or do not exist, a list of each document and a complete explanation of the basis upon which each document is being withheld.

We also respectfully request that you inform us of any particular additional information or records which you consider necessary to perfect Mr. Eppler's claim for benefits.

We thank you in advance for your consideration and assistance. Please do not hesitate to contact us with any questions or concerns you may have, or to discuss Mr. Eppler's benefits claim.

Very truly yours,

Julian M. Baum

cc: Mark A. Eppler



THE
HARTFORD

April 28, 2006

Mark A. Eppler
1131 Oakleaf Way
Stockton, CA  95209

Policy Holder:      Minnesota Methane Llc
Claimant:           Mark A. Eppler
Policy Number:      GLT302812

Dear Mr. Eppler:

We are writing to you about your claim for Long Term Disability (LTD) benefits. These benefits
are under the group insurance policy number GLT302812 for Minnesota Methane Llc.

We have completed our review of your claim for benefits and have determined that the evidence
submitted in support of your claim does not establish that you continue to meet the Policy definition
of Disability or Disabled as defined in your policy as of April 29, 2006.  As benefits for April 1
through April 29, 2006 have already been issued, no further benefits will be payable beyond April
29, 2006.

Benefits are payable under the Policy if the claimant satisfies the definition of "Disability" or
"Disabled" contained in the Policy.

Minnesota Methane LLC's LTD plan booklet for Policy GLT 302812 defines Disability or Disabled
on page 27 as follows:

> Disability or Disabled means:
> 1. during the Elimination Period, you are prevented from performing one or more of the
> Essential Duties of Your Occupation;
> 2. for the 24 months following the Elimination Period, you are prevented from performing
> one or more of the Essential Duties of Your Occupation, and as a result your Current
> Monthly Earnings are less than 80% of your Indexed Pre-disability Earnings;
> 3. after that, you are prevented from performing one or more of the Essential Duties of Any
> Occupation.
>
> If at the end of the Elimination Period, you are prevented from performing one or more of
> the Essential Duties of Your Occupation, but your Current Monthly Earnings are greater
> than 80% of your Pre-disability Earnings, your Elimination Period will be extended for a
> total period of 12 months from the original Date of Disability, or until such time as your
> Current Monthly Earnings are less than 80% of your Pre-disability Earnings, whichever
> occurs first.

Benefit Management Services
Minneapolis Disability Claim Office
3800 American Blvd. W, Ste 600
Bloomington, MN 55431
Fax (877) 454-7217

E  165

"Essential Duty" is also defined on Page 28 of the Policy as follows:

> Essential Duty means a duty that:
> 1. is substantial, not incidental;
> 2. is fundamental or inherent to the occupation; and
> 3. can not be reasonably omitted or changed.
> To be at work for the number of hours in your regularly scheduled workweek is also an
> Essential Duty.

"Your Occupation" is defined on Page 30 of the Policy as follows"

> Your Occupation, if used in this Booklet-certificate, means your occupation as it is
> recognized in the general workplace. Your Occupation does not mean the specific job you
> are performing for a specific employer or at a specific location.

"Any Occupation" is defined on Page 27 of the Policy as follows:

> Any Occupation means an occupation for which you are qualified by education, training or
> experience, and that has an earnings potential greater than an amount equal to the lesser of
> the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the
> Maximum Monthly Benefit shown in the Schedule of Insurance.

The Policy defines Indexed Pre-disability Earnings on page 28 as follows:

> Indexed Pre-disability Earnings when used in this policy means your Pre-disability Earnings
> adjusted annually by adding the lesser of:
> 1. 10%; or
> 2. the percentage change in the Consumer Price Index (CPI-W).
>
> The adjustment is made January 1st each year after you have been Disabled for 12
> consecutive months, and if you are receiving benefits at the time the adjustment is made.
>
> The term Consumer Price Index (CPI-W) means the index for Urban Wage Earners and
> Clerical Workers published by the United States Department of Labor. It measures on a
> periodic (usually monthly) basis the change in the cost of typical urban wage earners' and
> clerical workers' purchase of certain goods and services. If the index is discontinued or
> changed, we may use another nationally published index that is comparable to the CPI-W.

In addition, the Policy defines when benefit payments will terminate on page 17 as follows:

> When will benefit payments terminate?
>
> We will terminate benefit payment on the first to occur of:
> 1.   the date you are no longer Disabled as defined;...

E 166

We based our decision to deny your claim for further benefits upon Policy language and all documents contained in your claim file, viewed as a whole, including the following specific information:

1. Long Term Disability Income Benefit Questionnaire completed by you on March 12, 2004;
2. Your resume which was included with the Long Term Disability Income Benefit Questionnaire dated March 12, 2004;
3. Claimant questionnaire completed by you and dated September 15, 2005;
4. Attending Physician's Statement signed by Dr. Waters on November 16, 2004;
5. Medical records from Dr. Paul Waters' office for the period of July 8, 2003 through January 9, 2006;
6. Medical records from Dr. Peter Gannon's office for the period of May 8, 2003 through December 27, 2005;
7. Medical records from Dr. Crooks' office for the period of January 28, 2005 through August 25, 2005;
8. Medical records from the Stanford Hospitals and Clinics for the period of March 2, 2004 through November 11, 2004;
9. Pharmacy records from S-Mart for the period of January 1, 2005 through February 27, 2006;
10. Pharmacy records from Walgreens for the period of January 1, 2005 through February 28, 2006;
11. Surveillance videotape and accompanying report completed by HUB Enterprises, Inc. depicting your activities during the period of August 6 and August 7, 2005;
12. Surveillance videotape and accompanying report completed by HUB Enterprises, Inc. depicting your activities during the period of September 20 and September 21, 2005;
13. Surveillance videotape and accompanying report completed by HUB Enterprises, Inc. depicting your activities during the period of November 6 and November 7, 2005;
14. Your statement and results of your interview with Hartford Investigator, James Budkus, performed on March 1, 2006;
15. A letter to Dr. Waters from a Medical Case Manager with The Hartford dated April 6, 2006;
16. A letter to Dr. Crooks from a Medical Case Manager with The Hartford dated April 6, 2006;
17. A letter to Dr. Gannon from a Medical Case Manager with The Hartford dated April 6, 2006;
18. A response from Dr. Gannon dated April 22, 2006;
19. A response from Dr. Crooks dated April 24, 2006;
20. A telephone call between a Medical Case Manager with The Hartford and Dr. Waters on April 27, 2006;
21. A response from Dr. Waters dated April 27, 2006;
22. Employability Analysis Report completed by a Rehabilitation Clinical Case Manager with The Hartford dated April 28, 2006.

The information in your file shows that you ceased work as a Company Controller for the Minnesota Methane, Inc. on October 30, 2003 due to sleep apnea with hypersomnia. You have been receiving Long Term Disability benefits since April 29, 2004 because you were unable to perform the duties of Your Occupation.

E 167

The definition of Disability in your contract will change as of April 29, 2006. As of this date, you must be Disabled from Any Occupation to continue to receive Long Term Disability benefits.

On September 15, 2005, you completed a Claimant Questionnaire Form. On this form you described your condition/limitations as follows:

> Question: Please describe your current medical condition or conditions (including the specific limitations or restrictions they place on your ability to work).
> Answer: excessive daytime sleepiness (hypersomnolence) resulting in constant fatigue, inability to concentrate, focus, drive long distances, difficulty in making decisions, poor memory recall, forgetfulness, extreme headaces,
>
> Question: Has there been a change in your condition in the last 18 months?
> Answer: (You checked "No")
>
> Question: Please list all the types of activities that you do during the course of a typical day. What do you specifically do from the time you arise in the morning until you retire at night? Do you require assistance with any of your daily activities?
> Answer:(You Checked "Yes") Wife has to wake me up to take med's that wake me up, and go about daily tasks such as, shower, eat, rest. Wife drives to various Dr.'s to see why major joints are deteriorating, and have not recovered from MMA surgery.

To clarify your abilities and restrictions, video surveillance was conducted. Surveillance was conducted initially on August 6 and August 7, 2005. On August 6 you were not observed. On August 7 you were active for approximately 4 hours. During this time you were observed going to a baseball game, a department store, and back to your residence where you did yard work briefly. Additional surveillance was conducted on September 20 and 21, 2005. On September 20 you were not observed. On September 21 you departed driving your vehicle and returning to your residence approximately one hour later. A final round of surveillance was conducted on November 6 and November 7, 2005. On November 6 you were away from your residence for approximately 5 hours and 40 minutes. On this date you were observed going to a baseball game. While at the game you were observed standing, walking, briefly jogging, bending, catching a baseball, and pulling a bag.

During the periods of surveillance you were observed walking at a brisk pace, driving, getting in and out of a truck, walking down steps without the use of an available railing, carrying a bag of baseballs in both hands, pulling an athletic bag on wheels, placing most of your weight on each leg, bending at the waist, continuously on your feet for at least 34 minutes at a time, sitting continuously for 34 minutes at a time, and reaching in all directions. When observed you demonstrated no sign of difficulty or hesitation while performing the activities. Your observed activities were inconsistent with your reports that you experience excessive daytime sleepiness resulting in constant fatigue, inability to concentrate or focus.

In order to resolve the discrepancies between your demonstrated activities as documented in the above mentioned videotape surveillance and your self-reported capabilities, an appointment for an interview was scheduled for March 1, 2006, by Hartford Investigator, James Budkus. During the course of this interview, you stated, "The disabling medical conditions that currently prevent me from returning to work are cannot stay awake, cannot focus. Unable to put together my thoughts and stay focus on tasks on hand. I cannot complete the thought process. My symptoms include inability to wake up, headaches and burning sensation in my brain, inability to focus and concentrate, inability to drive any distances, having difficulty in get going." When asked about your ability to walk, you stated, "I am able to walk approximately a block. It takes me approximately twenty minutes to walk that far. My gait can be described as slow with a limp towards my right side. When I have walked approximately a block I then have to sit down and get off my feet because my back, feet, hips and shoulder hurt. I will experience pain. The pain can be describe as burning pain down my leg, in the middle of my back, tingling sensation down my leg. My pain level increases from 8 to 10 when I have walked that far/long. If I walk more than a block I would experience severe pain in my lower, hips, goes down my right leg and a tingling feeling down my right legs and feet. It feels like I am stepping on shards of glass. My pain level would be at a 10." You stated that you can stand for 10 to 15 minutes and then you would have to lie down because of pain. You also stated that you have difficulty getting in and out of a vehicle.

After taking the first statement, you were advised of the surveillance and results of our investigation. You reviewed the surveillance video with the Investigator and you confirmed you were the subject of the surveillance. After you watched the surveillance video you stated that the observed activities of walking, sitting, standing, bending, twisting, lifting/carrying baseball equipment, and being away from your residence for extended periods represented an above average level of functionality during your activities.

The investigator noted that during the interview on March 1, 2006 you moved slowly with a limp favoring your right. During the interview you reported that your back was bothering you and you kept on shifting your weight in chair. The investigator indicated you got up and down from seated position in a slow manner with wincing approximately 5 times. During the interview you were very lethargic when speaking, appeared to have heavy eyes, did lose your train of thought and requested that investigator repeat the question that was asked. The investigator stated that at times it took several attempts when putting the question forward to you. Your presentation during the interview and your reported level of functionality during the claimant interview was inconsistent with your observed activities during the surveillance.

After reviewing the statements you provided to James Budkus, we determined that additional clarification of your medical condition was necessary. Therefore, your claim file was reviewed by a Medical Case Manager, who sent your physicians, Dr. Gannon, Dr. Crooks, and Dr. Waters a letter dated April 6, 2006 which included the results of the above mentioned surveillance and a copy of the claimant interview with James Budkus. In the letter the Medical Case Manager requested that your physicians review the information which was sent to them and to comment on whether or not they agree that you were capable of performing a full time sedentary to light occupation that allowed position changes as needed.

On April 22, 2006 the Medical Case Manager received a response from Dr. Gannon. Dr. Gannon indicated that he agreed that you were not precluded from performing a full time sedentary to light occupation that allowed position changes as needed.

On April 24, 2006 the Medical Case Manager received a response from Dr. Crooks' office. The response indicated that Dr. Crooks was deferring an opinion regarding your functionality to Dr. Gannon.

On April 28, 2006 the Medical Case Manager spoke with Dr. Waters. Dr. Waters indicated that he had reviewed the information provided to him and he stated that there is significant disparity between what he sees in the clinic, what the investigator observed, and what was documented during surveillance. Dr. Waters stated that it is obvious that the symptoms and limitations you are reporting are greater than what is observed during surveillance. Your physician acknowledges that at one point in time you had a significant issue with hypersomnolence. However, Dr. Waters reports that this was prior to the numerous surgeries that seemed to improve your condition. The Medical Case Manger and your physician also discussed your back issues with which there is significant disparity between what you indicate that you can or cannot do and what is observed during the surveillance. Dr. Waters indicated that it is very difficult for him to make disability determinations based on brief office visits. Your physician reported that he referred your to Dr. Gannon and Dr. Crooks to address the issues which you report cause limitations. Therefore, Dr. Waters indicated that he defers to the opinion of Dr. Gannon and Dr. Crooks opinions regarding your functionality. Dr. Waters did state that an independent reviewer/evaluator may also be helpful.

It should also be noted that Dr. Waters was aware that Dr. Crook deferred an opinion regarding your functionality to Dr. Gannon, and that Dr. Gannon agreed that you are capable of performing a full time sedentary to light occupation with the ability to change positions as needed.

Dr. Waters and Dr. Crooks deferred to the opinion of Dr. Gannon regarding your functional ability. Dr. Gannon agreed that you are capable of performing a full time sedentary to light occupation with the ability to change positions as needed. Based on the information in your file including the opinion of your physicians you are capable of performing a full time sedentary to light occupation with the ability to change positions as needed.

When we investigated whether you could perform the duties of Any Occupation, we considered your prior education, training and experience. The information you provided to us shows that you obtained a Bachelor of Science Degree in Business Administration with a Minor in Finance from California State University, Sacramento in 1990. You have served in the US Air Force as a Flight Engineer for approximately 6 years. You worked in your own occupation as a Controller for approximately 5 yrs. You also worked as a Chief Financial Officer, for approximately 3 years; a Senior Vice President/Chief Financial Officer/Director for approximately 5 years; and an Assistant Vice President/Commercial Loan Officer for approximately 2 years. You also reported working as a Financial Institutions Examiner for approximately 2 years.

Using this information, one of our Vocational Rehabilitation Clinical Case Managers performed an employability analysis which showed that there are a number of occupations for which you are qualified that are within your physical capabilities of being functionally capable to perform full time sedentary to light demand work with the ability to change positions as needed. The salaries for these occupations are above 60% of your Indexed Pre-Disability Earnings ($5022.47), as required by the definition of Any Occupation. This listing of occupations is a sample of the occupations for which you are qualified:

1. Chief Bank Examiner              National Median Salary: $5026.67  per month
2. Controller                      National Median Salary: $6824.13  per month
3. Investment Analyst              National Median Salary: $5158.40  per month
4. Treasurer                       National Median Salary: $6824.13  per month
5. Vice President, Financial Institution    National Median Salary: $6824.13  per month
6. Operations Officer              National Median Salary: $6842.13  per month

Based on this information, we have concluded that you are not prevented from performing the Essential Duties of Any Occupation. In addition, Your Occupation as a Company Controller is also within your physical capabilities, and therefore you are not prevented from performing the Essential Duties of Your Occupation. Because of this, you will no longer meet the policy definition of Disability which will take effect as of April 29, 2006. Therefore, no further LTD benefits will be payable beyond April 28, 2006.

You have been issued LTD benefits through April 29, 2006. We will waive the overpayment for the LTD benefits issued for April 29, 2006 and therefore, you do not have to reimburse us for the day of benefits you are not eligible for.

Our records indicate that your LTD benefits have been overpaid as you were retroactively approved for Social Security Disability. We have been withholding $440 per month from your LTD benefit in order to recover the overpayment on your account. Your current overpayment balance on your account is $7920.75. As your LTD claim is terminated beyond April 29, 2006 please submit a payment to us within fifteen (15) days of this letter in the amount of $7920.75 in order to reimburse us. We have enclosed a self-addressed envelope for your convenience.

The Employee Retirement Income Security Act of 1974 (ERISA) gives you the right to appeal our decision and receive a full and fair review. You may appeal our decision even if you do not have new information to send us. You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim. If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from your receipt of this letter. Your appeal letter should be signed, dated and clearly state your position. Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim.

E 171

Once we receive your appeal, we will again review your entire claim, including any information previously submitted and any additional information received with your appeal. Upon completion of this review, we will advise you of our determination. After your appeal, and if we again deny your claim, you then have the right to bring a civil action under Section 502(a) of ERISA.

Please send your appeal letter to:

Claim Appeal Unit
Benefit Management Services
Hartford Life Insurance Company
P.O. Box 2999
Hartford, CT 06104-2999

You may also have this matter reviewed by the California Department of Insurance by writing directly to them at the following address:

California Department of Insurance
Consumer Service Division
300 South Spring Street, 11th Floor
Los Angeles, CA 90013
Telephone: (213) 897-8921 or (800) 927-HELP

We reserve all rights and defenses available to us in making our determination.

Sincerely,

*Timothy J Scully*

Timothy J. Scully, Investigative Specialist
Hartford Life and Accident Insurance Co.



THE
HARTFORD

November 11, 2005

Mark A. Eppler
1131 Oakleaf Way
Stockton, CA  95209

Policy Holder:    Minnesota Methane Llc
Claimant:         Mark A. Eppler
Policy Number:    GLT302812

Dear Mr. Eppler:

We are writing to you regarding your claim for Long Term Disability (LTD) benefits.  According to the provision of your group policy, in order to be eligible for LTD benefits you must meet the following definition of Disability:

**Disability or Disabled** means:
1. during the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation;
2. for the 24 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 80% of your Indexed Pre-disability Earnings;
3. after that, you are prevented from performing one or more of the Essential Duties of Any Occupation.

If at the end of the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, but your Current Monthly Earnings are greater than 80% of your Pre-disability Earnings, your Elimination Period will be extended for a total period of 12 months from the original Date of Disability, or until such time as your Current Monthly Earnings are less than 80% of your Pre-disability Earnings, whichever occurs first.

Your Disability must be the result of:
1. accidental bodily injury;
2. sickness;
3. Mental Illness;
4. Substance Abuse; or
5. pregnancy.

Benefit Management Services
Minneapolis Disability Claim Office
3800 American Blvd. W, Ste 600
Bloomington, MN 55431
Fax (877) 454-7217

**E 364**

Your failure to pass a physical examination required to maintain a license to perform the duties of Your Occupation, alone, does not mean that you are Disabled.

**Any Occupation** means an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance.

Your LTD benefits became effective on April 29, 2004. Effective April 29, 2006 you must be considered Totally Disabled as outlined in the second portion of the above definition in order to continue to be eligible for LTD benefits.

Please be advised that this office has initiated an investigation to determine if you will qualify for benefits on and after April 29, 2006. When we have completed our investigation, we will notify you regarding our determination.

Please complete and return the following:
Work & Education History Form and Repayment Agreement

Please have the physician presently treating you complete and return the following:
Attending Physician Statement and Physical Capacities Evaluation Form.

Please return all information that we asked for within twenty one (21) days in order to avoid any delays in processing your claim for benefits.

If you have any questions, please feel free to contact our office at (800) 752-9713, x66918. Our office hours are 8:00 AM to 8:00 PM CST, Monday through Friday.

Sincerely,


Corey D. Johnson, Examiner
Hartford Life and Accident Insurance Co.


Enclosure

Benefit Management Services
Minneapolis Disability Claim Office
3800 American Blvd. W, Ste 600
Bloomington, MN 55431
Fax (877) 454-7217

E 365



## THE HARTFORD

January 16, 2004


Mark Eppler
1131 Oakleaf Way
Stockton, CA 95209


Policy Holder:      Minnesota Methane LLC
Policy Number:      GRH 302812
Claimant:           Mark Eppler

Dear Mr. Eppler:

This letter is to provide you with information regarding your Short Term Disability (STD) claim under the Minnesota Methane LLC Short Term disability Policy.

We have approved your claim for STD benefits from October 30, 2003 through November 11, 2003. If you remain disabled beyond November 11, 2003 you must have your physician submit additional information specifying your complications, treatment plan, treatment dates, limitations and restrictions preventing you from working. Also, we will need an expected return to work date. If this information is not provided by January 26, 2004, we will assume that you do not wish to pursue benefits beyond November 11, 2003 and your claim will be closed.

In addition, your employer indicated that they would be paying you your regular salary through January 18, 2004, therefore we have offset your benefits to reflect this.

Since you are a resident of California, you are eligible for California State Disability benefits. The maximum benefit that you could receive from the state of California is $602.00 per week.

Since California State Disability is an offset to the Minnesota Methane LLC STD Policy, we have offset the amount which would be payable to you if you were to be awarded California State Disability benefits. However, the amount in which you are eligible for from California is greater than the amount you are to receive from STD. Therefore, no benefits are payable. If you are receiving less than the maximum amount of $602.00 please send us the correct amount in writing and we will recalculate your benefits.

If you have any questions, please contact our office at 1-800-752-9713. Monday through Friday from 8:00 a.m. to 6:00 p.m. Central Time.

Minneapolis Regional Office
Benefit Management Services
3800 American Blvd. W
Bloomington, MN 55431-4440
Telephone (952) 656-6900
Toll Free (800) 752-9713
Hearing Impaired/TTY (800)
931-2330

E 533

Sincerely,

*Jill VanDell*

Jill VanDell
Claims Examiner
Benefit Management Services (BMS/JMV)
Hartford Life and Accident Insurance Company



**APPLICATION FOR SHORT TERM DISABILITY INCOME BENEFITS**

**HARTFORD LIFE INSURANCE COMPANY**
**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

THE HARTFORD

**Section I**

**Employer's Statement**

**To Be Completed by the Employer**

| This claim is for *(Employee's Name)* | Social Security Number | Date of Birth |
|---|---|---|
| Mark A. Eppler | 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 | 06-10-61 |

Employee's Address *(Street, City, State, Zip)*
1131 Oakleaf Way, Stockton, CA 95209

**A. Information About the Employer**

| Company's Name | Group Policy Number |
|---|---|
| Minnesota Methane LLC | 302812 |

Address *(Street, City, State, Zip)*
3005 Douglas Blvd., Suite 105, Roseville, CA 95661

Name and Address of Division Where Employee Works *(if different from above)*

**B. Information About the Employee**

Date employee was hired    05-16-01

What was the employee's regularly scheduled work week?
Hours per Week    40
Scheduled workdays M - F    ✓    Other

Date employee became insured under this plan

**IS EMPLOYEE ENROLLED IN THE HARTFORD'S LONG TERM DISABILITY PLAN ?**    [X] YES    [ ] NO
**IF "YES," EFFECTIVE DATE**    07-12-03

Was the employee's STD insurance issued on the basis of a Personal Health Statement?    [ ] Yes    [X] No    If "Yes," attach copy.

Was the employee insured under your prior STD policy?    [ ] Yes    [X] No
If "Yes," please provide the inclusive date of coverage.    From _____ Through _____

Was the employee on Qualifed Family Leave when disability began?    [ ] Yes    [X] No
Did STD & LTD insurance continue while on Family Leave?    [ ] Yes    [ ] No
Date Leave of Absence started under Family Leave Act _____

**RECEIVED MPLS**

**JAN 15 '04**

**GROUP CLAIMS**

**C. Information Needed for Withholding and Reporting Taxes**

Based on the employer/employee premium contributions made over the last 3 years, what percentage of the STD   100   %
LTD   100   % benefit is considered taxable? *(See Section 7 of IRS Publication 15-A for information on determining the taxable percentage.)*

**D. Information About the Claim**

What was the employee's permanent job on his or her last day at work? *(Please attach a copy of the employee's job description.)*
Company Controller

| Last day employee actually worked | On that day, did the employee work a full day? |
|---|---|
| 10/29/03 | [ ] Yes [X] No  If "No," how many hours were worked? ___4 |

Why did employee stop working?
Due to sleep deprivation, could not function in his position.

Is the employee's condition work related?
[ ] Yes    [X] No

| Has a claim been filed with Workers' Compensation? | Date employee is expected/did return to work?   unknown |
|---|---|
| [ ] Yes  [X] No | Full time ?  [ ] Yes  [ ] No |
| If "Yes," send initial report of illness or injury or award notice. | |

LC-5180-17 Rev 09/02

**(1)**

E 535

## E. Information About Salary

Employee's **weekly**/hourly rate of pay $ _1817.30_

Is employee receiving Salary Continuance or Sick Leave?  [X] Yes  [ ] No

Weekly Amount $ _1817.30_  Date Payments Start _11/07/03_  Date Payments Will End _01-18-04_

Will/Is Employee receive(ing) Workers' Compensation Payments?  [ ] Yes  [X] No

Weekly Amount $ _____  Date Payments Start _____  Date Payments Will End _____

## F. Information About the Physical Aspects of the Employee's Job

Check the items below that relate to the employee's job and complete the information requested. Use these definitions for the frequency of occurrence.

*Not Applicable* means the person does not perform this activity.
*Occasionally* means the person does the activity up to 33% of the time.
*Frequently* means the person does the activity 34% to 66% of the time.
*Continuously* means the person does the activity 67% to 100% of the time.

**Frequency of Occurrence**

| Activity | N/A | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Standing | [ ] | [ ] | [X] | [ ] |
| Walking | [ ] | [ ] | [X] | [ ] |
| Sitting | [ ] | [ ] | [X] | [ ] |
| Balancing | [ ] | [ ] | [ ] | [ ] |
| Stooping | [ ] | [X] | [ ] | [ ] |
| Kneeling | [X] | [X] | [ ] | [ ] |
| Crouching | [X] | [ ] | [ ] | [ ] |
| Crawling | [X] | [ ] | [ ] | [ ] |
| Reaching/Working Overhead | [X] | [ ] | [ ] | [ ] |
| Keyboard Use/Repetitive Hand Motion | [ ] | [ ] | [X] | [ ] |
| Climbing | [X] | [ ] | [ ] | [ ] |

| Activity | Description | Frequency | Weight |
|---|---|---|---|
| [ ] Pushing | N/A | | ____ lbs. |
| [ ] Pulling | N/A | | ____ lbs. |
| [ ] Lifting | N/A | | ____ lbs. |
| [ ] Carrying | N/A | | ____ lbs. |

Can the job be performed by alternating sitting and standing?  [X] Yes  [ ] No

What are the major tasks requiring the use of one or both hands? Indicate the percentage of the employee's workday that is spent on each of these tasks.

| Task | % |
|---|---|
| Writing reports | 20 % |
| Working on Computer | 35 % |
| Reviewing Financial reports | 35 % |

## G. Information About the Job as it Relates to the Disability

Can the job be modified to accommodate the disability either temporarily or permanently?  [ ] Yes  [X] No  If "Yes," explain.

_____

Is it possible to offer the employee assistance in doing the job *(e.g., through the use of technology or personal assistance)?*  [ ] Yes  [X] No
If "Yes," explain.

## H. Signature

Name (Please print or type): _Trond Aschehoug_

Signature: _[signature]_

Telephone Number: ( _916_ ) _789-2250_

Title: _General Manager_

Date: _12/31/03_

Fax Number: ( _916_ ) _789-2256_

Section II

**APPLICATION FOR SHORT TERM DISABILITY INCOME BENEFITS**
**HARTFORD LIFE INSURANCE COMPANY**
**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY**

**THE HARTFORD**

**Employee's Statement**

To Be Completed by the Employee ( BE SURE TO ANSWER ALL QUESTIONS — FAILURE TO DO SO MAY DELAY YOUR CLAIM )

### A. Information About You

| Last name | First | Middle Initial | Social Security Number |
|---|---|---|---|
| EPPLER | MARK | A | 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 |

| Address *(Street)* | City | State/Province | Zip |
|---|---|---|---|
| 1131 OAKLEAF WAY | STOCKTON | CA | 95209 |

| Telephone Number | Date of Birth *(Month, Day, Year)* | | |
|---|---|---|---|
| (209) 951-4410 | 6/10/61 | ☑ Male ☐ Female | ☐ Single ☑ Married ☐ Widowed ☐ Divorced |

Your Employer *(include division, if applicable)*
MINNESOTA METHANE, LLC

### B. For an Injury, answer the following questions

When *(i.e., date/time)*, where and how did the injury occur?

### C. For Illness, Injury or Pregnancy, answer the following questions

Date you were first treated by a physician

04 / 10 / 2002
*(Month)* / *(Day)* / *(Year)*

Name of Physician DR. PAUL WATES

Address of Physician 1805 N. CALIFORNIA STREET, STE 201
STOCKTON, CA 95204

Telephone Number ( 209 ) 939-3840

Before you stopped working, did your condition require you to change your job, or the way you did your job?   ☐ Yes   ☑ No
If "Yes," explain.

What aspect of your condition made you unable to work?
FATIGUE, INABILITY TO THINK/CONCENTRATE, or STAY AWAKE.

Are you receiving or eligible for  ☐ Workers' Compensation  ☐ State Disability  ☐ No Fault Disability  ☐ Other _____
If "Yes," show policy number _____ and name and address of insurer _____

Weekly Amount $ _____    Date Payments Start _____    Date Payments Will End _____

Is your condition related to your occupation?  ☐ Yes  ☑ No  If "Yes," explain.

Have you filed, or do you intend to file a Workers' Compensation claim?  ☐ Yes  ☑ No  If "No," explain.

### D. Information About the Disability

| Last day you worked before the disability | Did you work a full day?  ☐ Yes  ☑ No | Date you were first unable to work |
|---|---|---|
| 10 / 29 / 03<br>*(Month)* / *(Day)* / *(Year)* | If "No," explain. EXHAUSTED; DIZZY<br>LEFT WORK @ HOME | 10 / 30 / 03<br>*(Month)* / *(Day)* / *(Year)* |

Since that date, have you done any work?  ☐ Yes  ☑ No
If "Yes," please indicate dates worked, name of employer and amount earned.

If you have not returned to work, do you expect to?
☑ Yes  Part time *(date)* _____  Full time *(date)* 6/2004
☐ No  UNKNOWN * ANTICIPATED DATE IS BASED ON SUCCESSFUL SURGERIES - 2 SURGERIES ARE PLANNED CRANIAL-FACIAL RECONSTRUCTION

### E. Information About Tax Withholding

Federal law requires us to withhold federal income tax from your check *if you request us to do so.*  We are also required to send a report to your employer at the end of each calendar year showing your name, total amount of benefits paid to you, total amount withheld, if any, and your social security number.  If you want us to withhold tax, please indicate on the line below the dollar amount to be withheld per benefit check.  Whole dollars only (minimum is $20.00 per week): $ _____ 0 .00.

LC-5180-17 Rev 09/02                    (3)

E 537

### APPLICATION FOR SHORT TERM DISABILITY INCOME BENEFITS

**F. Signature**

With the exception of any source(s) of income reported above in Section D of this form, I certify by my signature that I have not received and am not eligible to receive any source of income, except for my Hartford Disability Income. Further, I understand that should I receive income of any kind or perform work of any kind during any period The Hartford has approved my disability claim, I must report all details to The Hartford, immediately.

If I receive disability benefits greater than those which should have been paid, I understand that I will be required to provide a lump sum repayment to the insurance company. The insurance company has the option to reduce or eliminate future disability payments in order to recover any overpayment balance that is not reimbursed.

**For residents of all states** *EXCEPT* **California, Florida, New Jersey, Colorado, Pennsylvania, Arkansas, New Mexico, Louisiana, Oregon, and Virginia:** A person commits a fraudulent insurance act if that person knowingly, and with intent to defraud any insurance company or other person, either: (a) files an application for insurance or statement of claim containing any materially false information, or (b) conceals information concerning any material fact in order to obtain an insurance policy or a benefit under an insurance policy. **A fraudulent insurance act is a crime.** The Hartford shall pursue prosecution of any fraudulent insurance act to the fullest extent of the law.

**For residents of Florida:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

**For residents of New Jersey, Arkansas, New Mexico, and Louisiana:** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties. Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**For residents of Colorado: It is unlawful to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or its agent who knowingly provides false, incomplete, or misleading information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to an insurance settlement or award shall be reported to the Colorado Division of Insurance.**

**For residents of Pennsylvania:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects a person to criminal and civil penalties.

**For residents of California: For your protection, California law requires the following to appear on this form: Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.**

The statements contained in this form are true and complete to the best of my knowledge and belief.

X _____    X _____
SIGNATURE OF THE EMPLOYEE                         DATE

LC-5180-17 Rev 09/02                    (4)

E 538



**THE HARTFORD**

**APPLICATION FOR SHORT TERM DISABILITY INCOME BENEFITS**          Section III

### Authorization to Obtain and Release Information

TO: Any physician, medical practitioner, hospital, pharmacy, clinic or other medical or medically-related facility or provider of medical or dental services or supplies;

any employer, group policyholder, contract holder or insurer, benefit plan administrator, administrator, The Index System, business entities, financial institutions, consumer reporting agencies, educational institutions, or

any Federal, State or Local Government Agency, including Social Security Administration and Veterans Administration.

I authorize you to release and send to: (i) Hartford Fire Insurance Company, Hartford Life Insurance Company, Hartford Life and Accident Insurance Company, and any affiliate of one or more of these three companies, known collectively as The Hartford; or (ii) The Hartford's representatives, a complete copy of any and all of the following information, records or documents relative to

*MARK A. EMLER*          Insured's Name *(Please print.)*

*6-10-61*     (Date of Birth)   *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*   (Social Security Number)

1. Any and all medical information, including x-ray films, photocopies of medical records, medical histories, physical, mental or diagnostic examinations, and treatment notes. For purposes of this authorization, medical information specifically includes confidential information regarding HIV/AIDS, communicable diseases, alcohol or drug abuse, and mental health, as such information may relate to my claim for benefits.

2. Work information and history, including, but not limited to, job duties, earnings and personnel records, client lists, and and all other work-related information for contractual work performed; information on any insurance coverage and claims filed, including all records and information related to such coverage and claims; credit information, including, but not limited to, credit reports and credit applications; other financial information, e.g., Pension Benefits, bank records; business transactions of any kind or description, including billing, invoices or payment records of any kind; and academic transcripts.

3. Information concerning Social Security benefits, including, but not limited to, monthly benefit amounts, monthly payment amounts, entitlement dates, and information from my Master Beneficiary Record.

I understand that the information obtained by use of the Authorization will be used for the purpose of evaluating and administering a claim for benefits. Any information obtained will not be released by The Hartford to any person or organization EXCEPT to reinsuring companies or their representatives, The Index System, physicians who have treated me, or other persons or organizations performing business or legal services in connection with my Claim, or as may be otherwise lawfully required, or as I may further authorize, or as may be necessary to prevent or to detect the perpetration of a fraud.

I know that I may request to receive a copy of this Authorization.

This Authorization is given in connection with a claim for benefits. I intend that it be valid for the duration of the claim.

A photocopy or facsimile of this authorization shall be valid as the original.

_____
Signature of Insured or Guardian               Relationship to Insured *(if signed by Guardian)*

*1/4/04*
Date

LC-5180-17 Rev 09/02                    (5)

**E 539**

AP___ATION FOR SHORT TERM DISABILITY INCOME ___EFITS                    Section IV

**Attending Physician's Statement**

## HISTORY

Patient's Name MARK A. EPPLER   SSN 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   D.O.B 6/10/61   Height 5'11"   Weight 240

Patient's condition is the result of   [✓] Illness   [ ] Injury   [ ] Pregnancy   [ ] Mental/Nervous Condition

If pregnancy, what is the expected date of delivery? Month _____ Day _____ Year _____ LMP Date _____

Is condition due to an illness or an injury that is work related?   [ ] Yes   [✓] No

## DIAGNOSIS

Diagnosis (including any complications) Sleep Apnea with hyper Somnia

ICD9 Codes 780.53

Subjective Symptoms Excessive Sleepiness — also found to have N.S.I obstruction t facial structural abnormally

Physical Findings (list all test results, or enclose test)

Test Multiple Sleep Latency Test   Date 9/2003   Results Excessive daytime Somn.

Test _____   Date _____   Results _____

Blood Pressure  (Systolic) 142/90   (Diastolic) 90   (Date) 1-12-04

Remarks: Excessive daytime Somn-lence in spite of B, Pap & Adder 11.

## TREATMENT

Date of onset of this condition? _____   List all dates of treatment for this condition since patient ceased work _____

_____   Date of next office visit _____

Has patient been referred to any other physician? [✓] Yes [ ] No  Date(s) _____

If "Yes," name and address Dr Connelly  Stockton Colif   Specialty Pulmonary

Stanford university Sleep Center

Nature of treatment for this condition (including surgery/medications) Surgery for nasal Septal deviation and maxillofacial Surgery for facial abnormity

Was patient hospitalized for this condition? [ ] Yes [✓] No  If "Yes," date(s) admitted _____   date(s) discharged _____

Name and Address of Hospital(s) _____

Was surgery performed? [ ] Yes [✓] No  If "Yes," Date _____  Procedure _____  CPT Code _____

Progress (please check one)  [ ] Recovered  [ ] Improved  [✓] Unchanged  [ ] Retrogressed

## IMPAIRMENT

What are the patient's current physical limitations and restrictions?   Impairment is excessive Sleepiness — unable To drive Safely or Spend Time at desk without going To Sleep.

[ ] No limitation of functional capacity; capable of heavy work, no restrictions.
(Lifting 100 lbs. maximum with frequent lifting and/or carrying objects weighing up to 50 lbs.)

[ ] Medium manual activity
Lifting 50 lbs. maximum with frequent lifting and/or carrying objects weighing up to 25 lbs.)

[ ] Slight limitation of functional capacity; capable of light work
Lifting 20 lbs. maximum with frequent lifting and/or carrying objects weighing up to 10 lbs. Even though the weight lifted may be only a negligible amount, a job is in this category when it involves sitting most of the time with a degree of pushing and pulling of arm and/or leg controls, or when it requires walking or standing to a significant degree.)

[ ] Moderate limitation of functional capacity; capable of clerical/administrative (sedentary) activity
(Lifting 10 lbs. maximum and occasionally lifting and/or carrying articles. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.)

[✓] Severe limitation of functional capacity; incapable of minimal (sedentary) activity

What is the psychiatric impairment (if applicable)?

[ ] Inadequate information to make assessment.
[✓] Essentially good functioning in all areas. Occupationally and socially effective.
[ ] Slight difficulty in occupational functioning, but generally functioning well. Has some meaningful interpersonal relationships.
[ ] Moderate impairment in occupational functioning. Limited in performing some occupational duties.
[ ] Major impairment in several areas–work, family relations. Avoidant behavior, neglects family, is unable to work.
[ ] Inability to function in almost all areas.

Date patient ceased work due to this impairment: 10 (Month)  29 (Day)  03 (Year)

If physical or psychiatric limitations exist, indicate the date limitations have lasted, or will last through: _____ (Month) _____ (Day) _____ (Year)

Attending Physician's Name Paul A Witers   Telephone #: (209) 939-3840   Fax # (_____) _____

SS# or E.I.N. # 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   Degree MD   Specialty Gen'l Prac

Street Address 1805 N. Cal. fornia St   City Stockton   State CA   Zip Code 95204

Signature _____   Date Signed 1/12/04

LC-5180-17  Rev 09/02                    (6)

E 540