United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARK EPPLER, an individual,

    Plaintiff,

  v.

HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, LONG TERM DISABILITY AND LIFE PLAN FOR EMPLOYEES OF MINNESOTA METHANE LLC,

    Defendants.

No. C 07-04696 WHA

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this disability-benefits action, plaintiff Mark Eppler is suing defendant Hartford Life and Accident Insurance Company and defendant Long Term Disability and Life Plan for Employees of Minnesota Methane, LLC, for wrongful termination of disability benefits. Defendants now move for summary judgment on the ground that plaintiff failed to exhaust his administrative remedies before filing suit under the Employment Retirement Income Security Act of 1974, 29 U.S.C. 1001 *et seq*. The motion for summary judgment is **DENIED**.

## STATEMENT

The following facts are undisputed. Plaintiff was employed as a company controller by Minnesota Methane LLC. He also participated in an employee welfare-benefit plan governed by ERISA. The plan designated Hartford as the claims fiduciary. Hartford was responsible for

interpreting the policy and determining eligibility for benefits. In part, the plan stated (Anderson Decl. Exh. 1 at E680–81):

> Appealing Denials of Claims for Benefits
>
> On any wholly or partially denied claim, you or your representative must appeal once to the Insurance Company for a full and fair review. You must complete this claim appeal process before you file an action in court. Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 180 days from the date you received your claim denial. As part of your appeal:
>
> 1. You may request, free of charge, copies of all documents, records, and other information relevant to your claim; and
>
> 2. You may submit written comments, documents, records and other information relating to your claim.
>
> The Insurance Company's review on appeal shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.
>
> The Insurance Company will make a final decision no more than 45 days after it receives your timely appeal. The time for final decision may be extended for one additional 45 period provided that, prior to the extension, the Insurance Company notifies you in writing that an extension is necessary due to special circumstances, identifies those circumstances and gives the date by which it expects to render its decision. If your claim is extended due to your failure to submit information necessary to decide your claim on appeal, the time for decision shall be tolled from the date on which the notification of the extension is sent to you until the date we receive your response to the request.
>
> The individual reviewing your appeal shall give no deference to the initial benefit decision and shall be an individual who is neither the individual who made the initial benefit decision, nor the subordinate of such individual.[1]

---

[1] The plan's provisions regarding appeals is in accordance with 29 C.F.R. 2560.503-1(h)(3): "Group health plans. The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless, in addition to complying with the requirements of paragraphs (h)(2)(ii) through (iv) of this section, the claims procedures — (i) Provide claimants at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination; (ii) Provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual; (iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or

Plaintiff claimed to suffer from a severe form of sleep apnea with hypersomnia. Whether he was really ill is disputed. On October 29, 2003, he stopped working, claiming sleep deprivation, fatigue, and the inability to think, concentrate, and stay awake. Hartford approved his claim for short-term disability benefits for October 30, 2003, through November 11, 2003, and for long-term benefits from April 29, 2004, through April 29, 2006. To continue, plaintiff had to be considered "Totally Disabled."

In a letter to plaintiff dated April 28, 2006, Hartford stated that it had determined that the evidence submitted in support of plaintiff's claim did not establish that plaintiff continued to meet the policy definition of "disability" or "disabled." The letter defined relevant terms and included where they could be found in the Minnesota Methane LLC's LTD plan booklet for Policy GLT 302812. In addition, it quoted the part of the policy stating that benefit payments terminated on the date claimants were no longer "disabled" as defined. Twenty-two sources — including questionnaires, medical records, and surveillance videos — were listed, constituting the record upon which the decision was based. The letter described in further detail what was observed (Anderson Decl. Exh. 2 at E165–72):

> To clarify your abilities and restrictions, video surveillance was conducted. Surveillance was conducted initially on August 6 and August 7, 2006. On August 6 you were not observed. On August 7 you were active for approximately 4 hours. During this time you were observed going to a baseball game, a department store, and back to your residence where you did yard work briefly. Additional surveillance was conducted on September 20 and 21, 2005. On September 20, you were not observed. On September 21 you departed driving your vehicle and returning to your residence approximately one hour later. A final round of surveillance was conducted on November 6 and November 7, 2005. On November 6 you were away from your residence for approximately 6 hours and 50 minutes. On this date you were observed going to a baseball game. While at the game you were observed standing, walking, briefly jogging, bending, catching a baseball, and pulling a bag.

---

appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment; (iv) Provide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination; (v) Provide that the health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual . . ." .

3

> During the periods of surveillance you were observed walking at a brisk pace, driving, getting in and out of a truck, walking down steps without the use of an available railing, carrying a bag of baseballs in both hands, pulling an athletic bag on wheels, placing most of your weight on each leg, bending at the waist, continuously on your feet for at least 34 minutes at a time, sitting continuously for 34 minutes at a time, and reaching in all directions. When observed you demonstrated no sign of difficulty or hesitation while performing the activities. Your observed activities were inconsistent with your reports that you experience excessive daytime sleepiness resulting in constant fatigue, inability to concentrate or focus.

The claim file was reviewed by a medical case manager, who sent plaintiff's physicians the results of the surveillance and claimant interview with a Hartford investigator: "On April 22, 2006, the Medical Case Manager received a response from Dr. Gannon [plaintiff's doctor]. Dr. Gannon indicated that he agreed that you were not precluded from performing a full time sedentary to light occupation that allowed position changes as needed" (*ibid.*). The other physicians deferred to Dr. Gannon's opinion. The letter concluded with (emphasis added):

> The Employee Retirement Income Security Act of 1974 (ERISA) gives you the right to appeal our decision and receive a full and fair review. *You may appeal our decision even if you do not have new information to send us.* You are entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to your claim. *If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from your receipt of this letter.* Your appeal letter should be signed, dated and *clearly state your position.* Along with your appeal letter, you may submit written comments, documents, records and other information related to your claim.
>
> Once we receive your appeal, we will again review your entire claim, including any information previously submitted and any additional information received with your appeal. Upon completion of this review, we will advise you of our determination. After your appeal, and if we again deny your claim, you then have the right to bring a civil action under Section 502(a) of ERISA

Assuming the April 28 letter started the 180-day appeal clock (discussed below), plaintiff had until October 25, 2006, to appeal the decision.

Significantly, more than five months went by with no action by plaintiff, *i.e.*, of the 180-day period, all but three weeks went unused with no communication by plaintiff. His counsel then sent a letter to Hartford dated October 3, 2006. Counsel wrote, "Mr. Eppler wishes

4

to appeal The Hartford's decision. In order to permit him to do so, and to respond adequately to The Hartford's decision, we respectfully request that you provide to us the following documents and information . . ." The letter further stated, "We also respectfully request that you inform us of any particular additional information or records which you consider necessary to perfect Mr. Eppler's claim for benefits" (*id.* at E162–63). One of the issues presented is whether this constituted an appeal (as opposed to a statement of an expectation of future appeal).

Hartford responded by letter dated October 9, 2006. It acknowledged receipt of plaintiff's request. It also forwarded plaintiff's request for more documents to the company claim office. In the October 9 correspondence, Hartford wrote, "When your appeal is complete please send it to the following address: [address for Disability Claim Appeal Unit]. Please note that the complete appeal must be submitted to us by December 4, 2006" (*id.* at E133.C). The October 9 letter thus unilaterally extended the due date for appeal by 40 days. On October 23, 2006, Hartford notified plaintiff that he was "entitled to receive a copy of the complete administrative record. Enclosed you will find a complete copy of your client's claim file as well as a copy of the Booklet-certificate, the surveillance, and the Summary Detail Report. The enclosed comprises the complete administrative record" (*id.* at E133). In short, five months of the 180-day period went by with no action by anyone and then in the last month of the appeal period, plaintiff's counsel sent a letter asking for documents to review for use in an appeal. Hartford sent documents in reply and gave an extension to December 4 to make the appeal.

The following fact is disputed. Plaintiff claims that his counsel wrote to Hartford on November 30, 2006. In a letter nearly identical to the one dated October 3, plaintiff's counsel wrote, "Thank you for your letter dated October 23, 2006, enclosing some, but not all of the documents and information requested in my letter dated October 4, 2006 [sic]. In order to permit Mr. Eppler to respond adequately to The Hartford's decision, we respectfully request once again that you provide to us the following documents and information . . ." The letter further asked "that you inform us of any particular additional information or records which you consider necessary to perfect Mr. Eppler's claims for benefits. Once we have all of the requested documentation and information, we intend to have them reviewed by Mr. Eppler's physicians

5

1 and/or an independent physician for evaluation and response" (Fannon Decl. Exh. 5). At the
2 hearing on February 7, 2008, plaintiff's counsel swore under oath that he personally had written
3 and sent the November 30 letter to defendants.

4 Defendants, on the other hand, assert that Hartford did not receive the November 30 letter
5 or any further correspondence from plaintiff. Todd Andersen, Long-Term Disability Team
6 Leader in Hartford's Minneapolis Disability Claim Office, stated in his sworn declaration that
7 the processing of outside mail included summarizing the information in electronic summary
8 detail reports. All claim-related communications within the company and from or to individuals
9 outside the company (verbal or written) were reflected in these reports. For December 4, 2006,
10 the summary detail report stated only one line, indicating that Hartford had never received an
11 appeal from plaintiff and the claim file was therefore closed: "took off diary. appeal was not
12 submitted." No other activity was recorded in the summary detail report between October 23
13 and December 4, 2006 (Anderson Decl. Exh. 2 at E001–002). Furthermore, defendants allege
14 that it was at the joint case management conference on December 13, 2007, that plaintiff's
15 counsel "asserted for the first time that he had sent a letter to The Hartford dated November 30,
16 2006 . . . As discussed in the accompanying Swanson and Anderson declarations, this letter was
17 never received by The Hartford" (Fannon Decl. ¶ 3).

18 Plaintiff filed suit on September 12, 2007. He sought long-term disability benefits
19 allegedly due under the ERISA plan and damages resulting from breach of fiduciary duty and
20 statutory penalties. After the litigation had begun, plaintiff's counsel further claimed that a
21 medical report had been sent to Hartford to support plaintiff's appeal. In late November 2007,
22 plaintiffs' counsel forwarded to defendants a copy of the medical report, dated July 7, 2007,
23 by Dr. Thomas Lewis concluding that plaintiff was disabled by fatigue, daytime somnolence,
24 and cognitive impairment as a result of sleep apnea. Plaintiffs counsel also forwarded a copy of
25 a cover letter to Hartford, which purported to include a copy of Dr. Lewis's report. The cover
26 letter was dated August 2, 2007 (Fannon Decl. ¶ 2, Exh. 3 and 4). There is also a factual dispute
27 as to whether the August 2 letter was ever sent.

28

6

In summary, Hartford sent a denial-of-benefits letter to plaintiff on April 28. Over five months later, plaintiff's counsel sent a letter dated October 3 to Hartford stating that claimant "wishes to appeal The Hartford's decision" and requesting further information. Hartford responded on October 9, acknowledging receipt of plaintiff's request, forwarding the request to its claims department, and extending the appeal deadline from October 25 to December 4. The administrative record was sent to plaintiff on October 23. It is disputed as to whether or not plaintiff sent a letter on November 30, asking for more documents and information. Asserting that it had not yet received an appeal, Hartford closed the claim file on December 4.

Prior to the hearing on defendants' motion for summary judgment, the Court requested that both parties be prepared to address the following questions: whether claims manuals were considered during the process of denying benefits to claimants; whether there should be a tolling of the appeal period; whether there was any sworn testimony in the record showing that the November 30 letter had in fact been sent; and whether a notice of "intent to appeal" without a subsequent "appeal" was sufficient to at least require a second new review and decision on a *de novo* basis.

**ANALYSIS**

Summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved based on the factual record in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).[2]

The moving party "has both the initial burden of production and the ultimate burden of

---

[2] Unless indicated otherwise, internal citations are omitted from all cites.

7

1 persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*
2 *Cos., Inc.*, 210 F. 3d 1099, 1102 (9th Cir. 2000).  When the moving party meets its initial burden,
3 the burden then shifts to the party opposing judgment to "go beyond the pleadings and by [its]
4 own affidavits, or by the depositions, answers to interrogatories, and admissions on file,
5 designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*,
6 477 U.S. 317, 324 (1986).

7 Defendants claim that plaintiff failed to exhaust his administrative remedies and therefore
8 waived the right to pursue his claims against defendants.  The Ninth Circuit enforces the
9 exhaustion doctrine.  According to *Amato v. Bernard*, 618 F.2d 559, 566–67 (9th Cir. 1980), "[i]t
10 is true that the text of ERISA nowhere mentions the exhaustion doctrine . . . [W]e conclude from
11 both the legislative history and the text of ERISA that Congress did intend to grant such
12 authority to the courts, and that sound policy requires the application of the exhaustion doctrine
13 in suits under the Act."  There are two exceptions to the exhaustion requirement:  if the
14 "administrative route is futile or the remedy inadequate."  *Id.* at 568.

15 If a plaintiff has failed to exhaust his administrative remedies and does not fall under
16 one of the exceptions, he may be precluded from filing suit in district court.  In *Diaz v. United*
17 *Agricultural Employee Welfare Benefit Plan and Trust*, 50 F.3d 1478 (9th Cir. 1995),
18 a non-English speaking plan participant sued for benefits assertedly owed under ERISA.  He
19 read portions of the summary plan description in Spanish, which included a description of claim
20 procedures.  The plan later denied the participant's claim for his daughter's medical expenses.
21 Although the text of each of the plan's several denial letters was entirely in English, the back of
22 each letter contained the following notice in English and Spanish: "Appeal Rights — If you
23 believe your claim has not been paid correctly, you may send a written appeal within 60 days of
24 the date of this notice.  Any written appeal should include member's name and social security
25 number, the claim number, the reason for your appeal and any other information you feel might
26 help us in reviewing your claim.  Appeal should be mailed to the address below: [address of
27 benefits administrator]."

28 Even though the participant understood that his claim for his daughter's expenses was

8

being denied, he never took an appeal in the manner explained in the summary plan description and the plan's denial-of-benefit letters. *Id.* at 1482. The Ninth Circuit held, "By not submitting a written appeal to the Benefits Administrator, [the plan participant] failed to comply with the Plan's internal review procedures and hence did not exhaust the available administrative remedies." *Id.* at 1483. The court of appeals affirmed the district court's decision to grant the defendants' motions for summary judgment. Failure to properly exhaust administrative remedies can bar a claimant from filing suit in district court.

### 1. WAS THE DENIAL LETTER DATED APRIL 28, 2006, DEFECTIVE?

Here, Hartford sent to plaintiff a letter dated April 28, 2006, stating in relevant part, "If you do not agree with our denial, in whole or in part, and you wish to appeal our decision, you or your authorized representative must write to us within one hundred eighty (180) days from your receipt of this letter" (Anderson Decl. Exh. 2 at E71). According to defendants, this letter triggered a contractual 180-day limitations period.

On the other hand, plaintiff argues that the denial letter was defective, as a matter of law, to trigger any appeal deadline. In *White v. Jacobs Eng'g Group Long Term Disability Benefit Plan* 896 F.2d 344, 350–51 (9th Cir. 1990), a termination notice did not trigger the time bar for a former employee to contest the denial of his benefits under a group long-term disability plan, where the termination notice did not adequately meet statutory and regulatory requirements of specificity. *See also Chuck v. Hewlett Packard Co.*, 455 F.3d 1026 (9th Cir. 2006). Under 29 C.F.R. 2560.503-1(g)(1), "[t]he notification [of any adverse benefit determination] shall set forth, in a manner calculated to be understood by the claimant . . . (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." The Ninth Circuit, plaintiff argues, has taken pains to point out this particular requirement of ERISA — "we interpreted the ERISA regulations as calling for a 'meaningful dialogue' between claims administrator and beneficiary. In resolving [the beneficiary's] claim for benefits, [the plan's insurer and claims administrator] was required to give her '[a] description of any additional material or information' that was 'necessary' for her to 'perfect the claim,' and to do so 'in a manner calculated to be

9

1  understood by the claimant.'" *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 2008 WL
2  80704, *5 (9th Cir. 2008).

3  The April 28 letter fell short of this standard, plaintiff says. The letter only stated that
4  plaintiff "submit written comments, documents, records and other information related to your
5  claim" (Anderson Decl. Exh. 2 at E171). In addition, Hartford's October 23 letter only enclosed
6  some, but not all, of the requested documents and information. This follow-up letter failed to
7  respond to plaintiff's request as to how to perfect his claim, it is alleged.

8  This order disagrees. According to the Ninth Circuit, a denial letter must satisfy the
9  "common sense" requirement that plan administrators engage in "meaningful dialogue" with
10 claimants about the reasons for denying their claims. *Booton v. Lockheed Med. Benefit Plan*,
11 110 F.3d 1461, 1463 (9th Cir. 1997). This order holds that the April 28 letter did just that.
12 It was eight pages and single spaced, in sharp contrast to the ones criticized in *White*, *Chuck*,
13 and *Saffron*. In reasonably clear language, Hartford advised plaintiff of the basis of the denial
14 and of his rights. Hartford's conduct complied with the common-sense standard required by the
15 Ninth Circuit in *Booton*.

16 The April 28 letter was valid under 29 C.F.R. 2560.503-1(g) and (h), which set forth the
17 minimum requirements needed in a denial letter (see note 1, *supra*). According to the current
18 version of the federal regulation governing ERISA claims, 29 C.F.R 2560.503-1(g), the plan
19 administrator must provide a claimant with notice of any adverse benefit determination.
20 The notification should set forth in relevant part:

21     (i) The specific reason or reasons for the adverse determination;

22     (ii) Reference to the specific plan provisions on which the
    determination is based;

24     (iii) A description of any additional material or information
    necessary for the claimant to perfect the claim and an explanation
    of why such material or information is necessary;

26     (iv) A description of the plan's review procedures and the time
    limits applicable to such procedures, including a statement of the
    claimant's right to bring a civil action under section 502(a) of the
27     Act following an adverse benefit determination on review;

28     (v) In the case of an adverse benefit determination by a group health
    plan or a plan providing disability benefits,

10

>   (A) If an internal rule, guideline, protocol, or other similar criterion
>   was relied upon in making the adverse determination, either the
>   specific rule, guideline, protocol, or other similar criterion; or a
>   statement that such a rule, guideline, protocol, or other similar
>   criterion was relied upon in making the adverse determination and
>   that a copy of such rule, guideline, protocol, or other criterion will
>   be provided free of charge to the claimant upon request.

\* \* \*

Here, the April 28 letter stated the specific reasons for the adverse determination. It listed 22 documents upon which the termination decision was based — *e.g.*, medical records, pharmacy records, and surveillance videotapes. The letter described in further detail what was observed, such as plaintiff walking "at a brisk pace" and being active. Plaintiff's own doctor indicated that plaintiff could potentially perform a "full time sedentary to light occupation that allowed position changes as needed."

The April 28 letter also referred to the specific plan provisions on which the determination was based: "We have completed our review of your claim for benefits and have determined that the evidence submitted in support of your claim does not establish that you continue to meet the Policy definition of Disability or Disabled as defined in your policy as of April 29, 2006." The letter then pointed to page 27 of the Minnesota Methane LLC's LTD plan booklet for Policy GLT 302812, which defined "Disability" or "Disabled." All other relevant definitions were recopied into the letter. Page 17 of the plan booklet was referenced as explaining when benefit payments will terminate: "We will terminate benefit payment on . . . [t]he date you are no longer Disabled as defined . . . ." (Anderson Decl. Exh. 2 at E165–66).

This letter provided plaintiff with a description of any information necessary to perfect the claim. The letter concluded by saying, "You may appeal our decision *even if you do not have new information to send us* . . . You *may* submit written comments, documents, records and other information related to your claim" (*id.* at E171). Because plaintiff did not need to send any additional material or information in order to perfect his claim, Hartford did not need to explain what further information was needed. Even if plaintiff wanted to send additional information, it was encompassed in the "written comments" sentence — which was virtually identical to the language in 29 C.F.R. 2560-503(h)(ii): "claimants [should have] the opportunity to submit

11

1  written comments, documents, records, and other information relating to the claim for benefits."

2  The rest of the April 28 letter fulfilled the review-description requirement. It explained
3  that a claimant must appeal a denial of benefits within 180 days of his receipt of the letter.
4  It then described the procedures for review and, in the event of another denial, for the claimant's
5  right to bring a civil action pursuant to Section 502(a) of ERISA.

6  The April 28 notice in this case is distinguishable from the letters sent in *White*, *Chuck,*
7  and *Saffon*. In *White*, the letter lacked three of the four requirements of the then-applicable
8  regulations governing ERISA claims, 29 C.F.R. 2560.503-1(f).[3] The letter in *Chuck*,
9  which contained only one line regarding the denial of benefits, was similarly insufficient.
10 "[H]ere we find it plain that [defendant] came nowhere close to complying. The only evidence
11 that [defendant] met any of these [notice] obligations is its letter dated January 28, 1981,
12 which informed [plaintiff] that his 'vested interest has been changed due to the fact that from
13 September, 1972 to August, 1974 [plaintiff was] not an HP employee.' This statement complies
14 with the requirement that the Plan communicate the specific reason for the denial, but it clearly
15 does not meet the Plan's other obligations under [ERISA or 29 C.F.R. 2560.503-1(f)]."
16 *Chuck*, 455 F.3d at 1032.

17 In *Saffon*, the claimant received a denial letter that stated, "The medical information
18 provided no longer provides evidence of disability that would prevent you from performing your
19 job or occupation. You no longer meet the definition of disability therefore your claim has been
20 withdrawn . . . ." It further advised claimant that she could appeal the decision by providing
21 "medical evidence from the doctor(s) treating you for a condition that indicates you are under the
22 appropriate care and treatment and objective medical information to support your inability to

---

[3] In *White*, the regulations required plan administrators to "provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant: (1) The specific reason or reasons for the denial; (2) Specific reference to pertinent plan provisions on which the denial is based; (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review." The defendant in *White* failed to satisfy the first three requirements. The letters "offered only a conclusion that [the claimant] had been gainfully employed, citing no reasons or evidence other than 'information' in [the defendant's] files. Several courts have held that such conclusory statements regarding a claimant's ineligibility for benefits do not satisfy the notice requirements." *White*, 896 F.2d at 349.

12

perform the duties of your occupation." *Saffon*, 2008 WL 80704 at *4. The Ninth Circuit described the letter as "uninformative." "[It] does not explain why [the medical information provided offers no evidence of disability] . . . The termination letter does suggest [claimant] can appeal by providing 'objective medical information to support [her] inability to perform the duties of [her] occupation,' but does not explain why the information [claimant] has already provided is insufficient for that purpose." *Id.* at *6. In the instant case, however, the April 28 letter was much more detailed. It properly triggered the 180-day appeal period.

### 2. SHOULD THE 180-DAY APPEAL PERIOD HAVE BEEN TOLLED?

Plaintiff next argues, in effect, that the appeal period should be deemed tolled due to defendants' alleged failure to produce requested documents. As stated, the denial letter dated April 28 was not defective. Of course, Hartford extended the due date by 40 days, to December 4, when it produced a stack of documents in response to the October 3 letter. This order holds that no further tolling was necessary.

Under 29 C.F.R. 2560.503-1(h)(2), "the claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures . . . (iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section." Specifically, paragraph (m)(8)(ii) provides that the document is "relevant" if it "[w]as submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record or other information was relied upon in making the benefit determination." Paragraph (m)(8)(iv) further states that a document is relevant if, "[i]n the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination." Plaintiff alleges that Hartford did not send him some relevant documents and that the 180-day

13

appeal clock should be tolled.

Tolling is an equitable doctrine. "Equitable tolling is appropriate where there is 'excusable ignorance of the limitations period and [a] lack of prejudice to the defendant,' or where 'the danger of prejudice to the defendant is absent, and the interest of justice [require relief].'" *Forester v. Chertoff*, 500 F.3d 920, 930 (9th Cir. 2007).

This order examines the equities to determine whether or not tolling applies. The equities work against plaintiff in the instant action. *First*, plaintiff let almost all of the 180 days glide by in silence. Only near the eleventh hour did he request further information from Hartford. *Second*, Hartford provided a stack of materials and extended the appeal deadline to December 4, 2006. Plaintiff then let the rest of October and November go by without any action. Even crediting the story that his counsel mailed a further letter on November 30, the supposed letter did not zero in on any specific shortfalls in the stack of documents earlier provided. Instead it merely requested almost verbatim the same list of documents requested the first time. Put differently, instead of trying to isolate any specifics still needed for an appeal, plaintiff's counsel merely re-demanded the same long list of materials and did so only four days before the deadline, as extended. Counsel clearly did not take the time and trouble to review the materials received and tailor his request to any specific items still needed. Exactly what else counsel was requesting was not clear. Indeed, it is only from plaintiff's opposition brief that we now know he still seeks the Summary Plan Description and Hartford's claims manual.[4] Both sides owe each other a dialogue in this process but plaintiff's counsel's contribution was singularly unhelpful, assuming the letter was sent at all. *Third*, there is no showing that plaintiff was prejudiced in any way. He gives no reason why he needed these materials or how the lack thereof disadvantaged his claims; he only argues that federal regulations require Hartford to produce certain documents, and Hartford failed to do so. Hartford, on the other hand, had

---

[4] Since the hearing set for February 7, 2008, defendants have provided the declaration of Timothy Scully, the investigation specialist who wrote the April 28 denial letter. Mr. Sculley states, "I recall Mr. Eppler's claim; however, I do not recall ever having consulted, referred to, or relied upon the manual in handling and investigating Mr. Eppler's claim. I typically consulted the manual only on a specific, as-needed basis for claims involving unusual circumstances, and this was not such a claim" (Scully Decl. ¶ 3). Because the claims manual was irrelevant, defendants were therefore under no obligation to produce it.

14

provided plaintiff with abundant notice as to the basis of the denial — with its eight-paged, single-spaced detailed denial letter, a complete copy of plaintiff's claim file, a copy of the booklet-certificate, the surveillance, and summary detail report.  Plaintiff had no excusable delay and was not prejudiced.  He was not entitled to any tolling.

### 3. DID THE OCTOBER 3 LETTER CONSTITUTE AN APPEAL?

This order holds that plaintiff's October 3 letter should have been treated as an appeal once the appeal period expired. The second paragraph stated, "Mr. Eppler wishes to appeal The Hartford's decision.  In order to permit him to do so, and to respond adequately to The Hartford's decision, we respectfully request that you provide to us the following documents and information . . ." (Anderson Decl. Exh. 2 at E162).  Hartford was put on notice that plaintiff wished to appeal.         Under the plan, Hartford owed plaintiff the duty to make a second, independent review, even if it were based on the same record with no new submissions. The plan stated, "The Insurance Company's review shall take into account all comments, documents, records and other information submitted by you relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination . . . The individual reviewing your appeal shall give no deference to the initial benefit decision and shall be an individual who is neither the individual who made the initial benefit decision, nor the subordinate of such individual" (Anderson Decl. Exh. 1 at E680–81).

The appeal request did not need to be detailed.  According to the plan, "Your appeal request must be in writing and be received by the Insurance Company no later than the expiration of 180 days from the date you received your claim denial.  As part of your appeal . . . [y]ou *may* submit written comments, documents, records and other information relating to your claim" (*ibid.*) (emphasis added).  The plan policy was less demanding than the April 28 letter, which requires that "[y]our appeal letter should be signed, dated and *clearly state your position*" (Anderson Decl. Exh. 2 at E171) (emphasis added).  Because the plan policy only required plaintiff to submit the appeal request in writing, plaintiff's October 3 letter was enough to trigger Hartford's duty to give the claim file a second, independent review, even if based on only the same record used by the first reviewer.

15

It is true that the October 3 letter implied that a more formal appeal would be forthcoming. When it did not arrive, the question is whether to conclude an appeal was intended at all or to conclude that the claimant wished to appeal but had no new documents. In light of the solicitude under ERISA for claimants, Hartford should have gone ahead and given a second, independent look into the matter, treating it as an appeal without further submission subject to the *de novo* review.

This matter is hereby remanded to Hartford to conduct its administrative review of plaintiff's claim. Because Dr. Lewis's letter has arisen in the meantime, Hartford shall consider it during its review process. Furthermore, due to plaintiff's failure to point to any specific documents in his letter to Hartford, Hartford need not produce any more material; it may proceed to make its decision (while taking Dr. Lewis' letter into account).

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is **DENIED** and the matter is **REMANDED** to Hartford.

**IT IS SO ORDERED.**

Dated: February 11, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

16