1  LAURA E. FANNON (SBN 111500)
   WILSON, ELSER, MOSKOWITZ,
2      EDELMAN & DICKER LLP
   525 Market Street, 17th Floor
3  San Francisco, CA 94105-2725
   Tel.: (415) 433-0990
4  Fax: (415) 434-1370

5
   Attorneys for Defendants
6  HARTFORD LIFE AND ACCIDENT INSURANCE
   COMPANY, LONG-TERM DISABILITY AND LIFE PLAN
7  FOR EMPLOYEES OF MINNESOTA METHANE LLC

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12 MARK A. EPPLER,                        )  Case No.: C07-04696 WHA ADR
                                          )
13            Plaintiff,                   )  **NOTICE, MOTION, AND**
                                          )  **MEMORANDUM OF POINTS AND**
14       vs.                               )  **AUTHORITIES IN SUPPORT OF**
                                          )  **MOTION FOR SUMMARY**
15 HARTFORD LIFE AND ACCIDENT             )  **JUDGMENT/ADJUDICATION RE**
   INSURANCE COMPANY; LONG-TERM           )  **EXHAUSTION OF ADMINISTRATIVE**
16 DISABILITY AND LIFE PLAN FOR           )  **REMEDIES**
   EMPLOYEES OF MINNESOTA                  )
17 METHANE LLC,                            )  Date:  July 31, 2008
                                          )  Time:  8:00 a.m.
18            Defendants.                   )  Courtroom: 9
                                          )
19 _____    )  Hon. William H. Alsup

20                                            Documents Attached:
                                              1. Fannon Declaration;
21                                            2. Davis Declaration;
                                              3. Notice of Manual Filing of
22                                               Administrative Record;
                                              4. Proposed Order.
23

24

25

26

27

28

---

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

# TABLE OF CONTENTS

· Page(s):

NOTICE AND MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 3

OVERVIEW ................................................................................................................... 3

FACTS PERTINENT TO THIS MOTION ................................................................. 4

A.   Plaintiff. ................................................................................................................ 4

B.   The policy. ............................................................................................................ 4

C.   The Claim. ............................................................................................................ 5

   1.   The STD claim. ............................................................................................... 5

   2.   The LTD claim. ............................................................................................... 6

      a.   Initial claim handling. ................................................................................ 6

      b.   Application for SSDI. ................................................................................. 7

      c.   Orthopedic issues. ...................................................................................... 7

      d.   Investigation preparatory to the change of definition of disability. .......... 8

         (1)   Reported symptoms and medical records. ........................................... 8

         (2)   Surveillance and in-person interview with investigator. ..................... 9

         (3)   Communications with treating physicians. .......................................... 9

         (4)   Employability Analysis Report. ......................................................... 10

      e.   Termination of benefits, April 28, 2006. ................................................ 10

   3.   The October 3, 2006 letter from Julian Baum, Esq., to The Hartford. ........... 11

D.   The Filing of This Lawsuit and the Exhaustion Motion. ................................. 11

E.   The Appeal Review on Remand. ...................................................................... 12

   1.   Dr. Filderman's report. ................................................................................. 12

   2.   The decision upholding termination of benefits, June 5, 2008. ..................... 13

SUMMARY OF ARGUMENTS. ............................................................................... 14

LEGAL DISCUSSION ............................................................................................... 15

-i-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1    I.  THE HARTFORD DID NOT ABUSE ITS DISCRETION IN DENYING THE CLAIM...... 15

2    A.    The Claim Determination Must Be Reviewed for Abuse of Discretion. ........................... 15

3    B.    The Hartford Properly Exercised Its Discretion in Reaching Its Decision. ....................... 16

4    II.  AS THE PLAN IS SUED ONLY AS A NECESSARY PARTY, IT IS ENTITLED TO

5       JUDGMENT IN ITS FAVOR.................................................................................................... 18

6    CONCLUSION........................................................................................................................... 18

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-ii-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

# TABLE OF AUTHORITIES

Page(s):

## Cases

*Abatie v. Alta Bates Health & Life Insurance Co.*
    458 F.3d 955 (2006) ................................................................... 1, 16

*Eley v. Boeing Co.*
    945 F.2d 276 (9th Cir. 1991) ......................................................... 15

*Firestone Tire & Rubber Co. v. Bruch*
    489 U.S. 101, 103 L.Ed.2d 80, 109 S.Ct. 948 (1989) ............................. 1, 15

*Ford v. MCI Communs. Corp. Health & Welfare Plan*
    399 F.3d 1076 (9th Cir. 2005) ......................................................... 18

*Kearney v. Standard Ins. Co.*
    175 F.3d 1084 (9th Cir. 1999) ......................................................... 15

*Madden v. ITT Long Term Disability Plan*
    914 F.2d 1279 (9th Cir. 1990) ..................................................... 15, 18

*Metropolitan Life Insurance Co. v. Glenn*
    2008 U.S. LEXIS 5030 (June 19, 2008) ......................................... 1, 14, 16

*Sabatino v. Liberty Life Ins. Co.*
    286 F.Supp.2d 1222 (N.D. Cal. 2003) ............................................... 17

*Walker v. American Home Shield Long Term Disability Plan*
    180 F.3d 1065 (9th Cir. 1999) ......................................................... 15

## Statutes

29 United States Code section 1001 (ERISA) ......................................... 1, 3

Federal Rules of Civil Procedure 56 .................................................... 1

-iii-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

**NOTICE AND MOTION**

TO PLAINTIFF MARK A. EPPLER ("PLAINTIFF") AND TO HIS ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that July 31, 2008, at 8:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, the Honorable William H. Alsup will hear the instant motion of defendants Hartford Life and Accident Insurance Company ("The Hartford") and Long Term Disability and Life Plan for Employees of Minnesota Methane LLC ("the Plan") (jointly, "defendants") for summary judgment or partial summary judgment/summary adjudication of issues, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The motion is made on the ground that there is no genuine issue as to any material fact, and defendants are entitled to judgment as a matter of law, in that The Hartford did not abuse its discretion in terminating plaintiff's long-term disability benefits under an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. section 1001 et seq., and there is no independent basis for liability against the Plan.

Alternatively, defendants seek judgment in their favor and against plaintiff as to this entire action, or, in the alternative, as to the following issues:

1.    Defendants seek an order adjudicating that the determination of its claim administrator, The Hartford, of plaintiff's claim for long-term disability benefits under his employer's employee welfare benefit plan is subject to review by this court for abuse of discretion, pursuant to *Metropolitan Life Insurance Co. v. Glenn,* 2008 U.S. LEXIS 5030 (June 19, 2008); *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 103 L.Ed.2d 80, 109 S.Ct. 948 (1989); and *Abatie v. Alta Bates Health & Life Insurance Co.,* 458 F.3d 955 (2006);

2.    If the court decides that The Hartford's claim determination is subject to review by this court for abuse of discretion, defendants seek an order adjudicating that The Hartford did not abuse its discretion in denying plaintiff's claim for benefits after the first 24 months of long-term disability payments, and that defendants are entitled to judgment in their favor and against

-1-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1  plaintiff as a matter of law;

2          3.      If The Hartford's claim determination is held to be subject to a more stringent

3  standard of review, defendants seek an order adjudicating that, under that more stringent

4  standard of review, The Hartford properly denied plaintiff's claim after the first 24 months of

5  long-term disability payments;

6          4.      As the Plan is sued only as a necessary party and not because of any malfeasance

7  alleged against it separately from The Hartford, the Plan is entitled to judgment in its favor as a

8  matter of law.

9          The motion for summary judgment as to plaintiff's entire action or, in the alternative, as

10  to the specific issues set forth above, is made on the ground that there is no genuine issue as to

11  any material fact, and defendants are entitled to judgment as a matter of law.  The motion is

12  based upon this notice, motion, and memorandum of points and authorities, as well as upon the

13  accompanying the declarations of Laura E. Fannon and Christopher B. Davis; the notice of

14  manual filing of the redacted administrative record, Bates numbered E001 to E686 and EA687

15  to EA1037; the proposed order granting the motion; and all pleadings on file in this action.

16

17                          WILSON, ELSER, MOSKOWITZ,
                            EDELMAN & DICKER, LLP

18

19

20  Date: June 26, 2008                    By_____/s/Laura E. Fannon_____ __
                                                Laura E. Fannon
21                                           Attorneys for Defendants
                                          HARTFORD LIFE AND ACCIDENT
22                                        INSURANCE COMPANY and LONG-
                                          TERM DISABILITY AND LIFE PLAN FOR
23                                        EMPLOYEES OF MINNESOTA METHANE LLC

24

25

26

27

28
                                    -2-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**OVERVIEW**

3   Plaintiff brings this action for long-term disability benefits under a group disability

4   insurance policy issued to Minnesota Methane LLC as part of an employee welfare benefit plan

5   governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.

6   section 1001 et seq.  After plaintiff stopped working as a result of sleep apnea and, later,

7   orthopedic problems, The Hartford paid plaintiff benefits for the full two-year "own

8   occupation" period of the policy.  After that, plaintiff was required to prove that he was disabled

9   from "any occupation," as defined in the policy.

10   On April 28, 2006, having determined, based upon the opinions of plaintiff's own

11   physicians, that plaintiff did not satisfy the more stringent disability definition, The Hartford

12   terminated plaintiff's benefits.  In its February 11, 2008 order, this court held that The

13   Hartford's denial letter satisfied the Department of Labor's regulations governing such letters.

14   The Hartford's letter advised plaintiff that he had 180 days from the date of denial to appeal the

15   decision.  The 180-day period expired on October 25, 2006.

16   On October 3, 2006, plaintiff's present attorney, Julian Baum, Esq., advised The

17   Hartford by letter that plaintiff wished to appeal and requested the file and various documents.

18   The Hartford sent Mr. Baum the administrative record and the policy on October 23, 2006.  The

19   Hartford voluntarily extended the appeal period to December 2006.  However, The Hartford did

20   not receive anything further from plaintiff.  In December 2006, The Hartford closed its file.

21   Plaintiff filed this action on September 12, 2007.  After the litigation was in progress,

22   Mr. Baum asserted that he had sent a medical report by Thomas Lewis, M.D., to The Hartford

23   to support plaintiff's appeal.  Upon request, he provided to defense counsel a copy of the

24   medical report (bearing a date of July 7, 2007) and its cover letter (bearing a date of August 2,

25   2007), both addressed to The Hartford's Minneapolis office but never received.

26   In February of this year, this court heard and denied defendants' motion for summary

27   judgment based upon exhaustion of administrative remedies, holding that The Hartford should

28

-3-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1   have conducted its review on appeal based upon the October 3, 2006 letter. The court remanded

2   the claim to The Hartford to conduct such a review and limited the documents to be reviewed to

3   the administrative record as it existed at the time of file closure, plus Dr. Lewis's report.

4        The appeal review was conducted as ordered by the court and included a review by a

5   specialist in sleep medicine and pulmonary medicine, who also consulted with Dr. Lewis.

6   Based upon the information in the file, Dr. Lewis's report, and Dr. Filderman's report, The

7   Hartford found insufficient information to support plaintiff's claim under the more stringent

8   "any occupation" definition of disability. On June 5, 2008, The Hartford advised plaintiff that it

9   was upholding its claim determination.

10       Defendants bring this motion based upon the administrative record previously submitted

11  to the court and upon the non-privileged documents reviewed and generated on appeal.

12

13                      **FACTS PERTINENT TO THIS MOTION**[1]

14  **A.    Plaintiff.**

15       Plaintiff, who is now 47 years old, was employed as a Controller by Minnesota Methane

16  LLC beginning May 16, 2001. E535. His position at Minnesota Methane, like most of his

17  recent prior positions, involved oversight of the company's financial operations. E488-489.

18  Plaintiff ceased working as of October 30, 2003, and made a claim under the plan for short term

19  disability benefits. E535-540.

20  **B.    The Policy.**

21       During his employment with Minnesota Methane, plaintiff was insured, on a non-

22  contributory basis (i.e., premiums were employer paid), under a group policy (GVL-016003),

23

24  _____

25  [1]  References are to the Bates numbered administrative record authenticated by Christopher
     Davis, the Senior Appeal Specialist who handled the review on remand.. Bates pages
26   E001 to E686 constitute the original administrative record through the date the file was
     closed. The documents considered on appeal have been designated "EA__" and
27   numbered sequentially to the original record. These supplementary documents are Bates
     numbered EA687 to EA1037.
28
                                    -4-

account number 302812, issued by The Hartford to the Trustee of the Wholesale Trade Industry Group Voluntary Life and Disability Insurance Trust, in which Minnesota Methane was a participating employer.  The policy offered short and then long term disability benefits at 60 percent of salary[2] for total disability after a 180-day elimination period for the LTD coverage. (E628-38, E639-58.)

The policy contained a 24-month "own occupation" disability definition, with benefits payable therafter to age 65 for continuing disability from any occupation.  E655.  **Disability from any occupation** is defined as being "prevented from performing one or more of the Essential Duties of Any Occupation."  "**Any Occupation**" means

> an occupation for which you are qualified by education, training or experience, and that has an earnings potential greater than an amount equal to the lesser of the product of your Indexed Pre-disability Earnings and the Benefit Percentage and the Maximum Monthly Benefit shown in the Schedule of Insurance.

E654.  "**Essential Duty**" is defined as "a duty that:  (1) is substantial, not incidental; (2) is fundamental or inherent to the occupation; and (3) can not be reasonably omitted or changed." The definition adds, "To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty."  E655.

The policy contains the following discretionary clause:  "**Who interprets policy terms and conditions?**  We have full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy."  E680.

Plaintiff first became insured under The Hartford's policy on July 12, 2003.  E535.

**C.    The Claim.**

**1.    The STD claim.**

Plaintiff last worked at Minnesota Methane on October 29, 2003.  E535.  At that time his base salary was $1,817.30 per week ($94,499.60/year, or $7,874.97/month).  E482, E536.

---

[2]    See discussion of the Continuity of Coverage provisions, section 2(a) *infra*.

359709.1

1    Plaintiff received salary continuation benefits until January 18, 2004, E536, and made a claim

2    for short-term disability (STD) benefits, E535-540.  In the Attending Physician's Statement

3    completed by Paul A. Waters, M.D., a general practitioner, plaintiff was diagnosed with "sleep

4    apnea with hypersomnia."  E540.  On January 16, 2004, The Hartford approved the STD claim

5    for the period from October 30, 2003, through November 11, 2003, offsetting the salary

6    replacement benefits and expected California State Disability benefits against the benefits

7    payable under the Hartford policy.  E533-534.  On February 19, 2004, The Hartford sent

8    plaintiff long-term disability (LTD) forms for completion.  E522, E533.  In that letter, plaintiff

9    was advised that the Pre-existing Conditions Limitation might apply, or, if he was covered

10   under a prior plan, that his claim might be subject to the Continuity of Coverage provisions of

11   The Hartford's policy.  E522.  The Hartford approved his claim for the balance of the STD

12   period, through April 28, 2004.  E485.

13        **2.     The LTD claim.**

14            **a.     Initial claim handling.**

15        The records that The Hartford obtained in processing plaintiff's claim indicated that, for

16   some time, plaintiff had been receiving specialized care for his sleep problems through Stanford

17   University Medical Center Sleep Clinic.  E527.  In fact, a comprehensive Stanford report dated

18   December 17, 2003, stated that plaintiff "has had sleepiness since he was a child, frequently

19   nodding off in class and having difficulty with concentration."  He reported that his condition

20   had worsened, so that he was "nodding off in the car" in 2000, which in turn led to his diagnosis

21   of sleep apnea and resultant treatment with a CPAP machine.  E527.

22        In March 2004, plaintiff underwent reconstructive surgery at Stanford in an effort to

23   mitigate his sleep problems. Two other surgical procedures followed in May and June 2004.

24   E444.  His surgeon's History and Physical for May 2, 2004, corroborated that plaintiff's

25   symptoms "have been present for many years, and date back to many years."  E284.  On May

26   13, 2004, plaintiff's LTD claim was approved.  E463-469.  The letter explained that, because

27   his disability arose from a pre-existing condition, as defined in the policy, his benefits would be

-6-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1    paid under the Continuity of Coverage provisions of The Hartford policy. The practical effect

2    of this determination was that benefits would be paid at the 60 percent benefit level provided by

3    the prior Principal Mutual policy rather than at the 66-2/3 percent benefit level otherwise

4    applicable under the Hartford policy. E466. Plaintiff was invited to appeal this determination

5    within 180 days if he disagreed with it. E467-468. He did not do so. Thereafter, benefits were

6    paid at the 60 percent level for the balance of the two-year own occupation period.

7          In his November 8, 2004 Claimant Questionnaire, plaintiff continued to report excessive

8    daytime sleepiness and resulting problems with memory and concentration. E448. His primary

9    care physician, Dr. Waters, continued to give him a primary diagnosis of "hypersomnia—sleep

10   apnea" notwithstanding the multiple corrective surgeries and use of Adderall (an amphetamine).

11   E444-445. However, Dr. Waters characterized plaintiff's condition as "improving," E444, and

12   noted that plaintiff still was recovering from the prior surgery, E445.

13                    **b.    Application for SSDI.**

14         At about the same time, The Hartford advised plaintiff of the requirement that he apply

15   for Social Security Disability benefits (SSDI). E412. As noted in The Hartford's November 3,

16   2004 letter to plaintiff, the policy provided for an offset of its benefit payments by SSDI

17   payments. At the same time, the letter stated, an SSDI award would benefit plaintiff by freezing

18   his earnings record during the years he received benefits, permitting a larger retirement benefit,

19   as well as entitling plaintiff to earlier Medicare benefits. E413. Plaintiff applied for SSDI and,

20   on July 5, 2005, was advised that he would receive a lump-sum SSDI payment retroactive to

21   April 2004, as well as ongoing monthly payments. E387. His dependents were awarded

22   benefits on account of his disability as well. E392-397. Plaintiff was advised of the resulting

23   overpayment under The Hartford policy. E370-372. Plaintiff reimbursed The Hartford for

24   some of the overpaid amount, though $7,920.75 remained outstanding. E367-368, E132.

25                    **c.    Orthopedic issues.**

26         In early 2005, plaintiff fell and injured his right hip and arm, complaining also of low

27   back and left shoulder pain. E405. The April 21, 2005 office visit note by his internist, Dr.

28

-7-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1  Waters, reflected that plaintiff had had an MRI suggestive of a herniated disc with nerve

2  impingement. He also claimed right leg pain and weakness. E404. Plaintiff reported that he

3  was still seeing specialists for his sleep and breathing problems, which he complained had not

4  been alleviated by the surgeries. E404. However, a December 1, 2004 progress note by Robert

5  Riley, M.D., at the Stanford Sleep Disorders Clinic stated that plaintiff's November 9, 2004

6  sleep study (E322-326) "shows significant improvement. He has a hypopnea index of 10 and

7  minimal desaturations." E318.

8         **d.**      **Investigation preparatory to the change of definition of disability.**

9              **(1)**      **Reported symptoms and medical records.**

10       In anticipation of the end of the own occupation period, April 29, 2006, The Hartford

11  began its investigation concerning whether plaintiff would be eligible for benefits under the

12  "any occupation" definition of total disability. E364-365. Plaintiff's September 15, 2005

13  Claimant Questionnaire continued to report excessive daytime sleepiness and associated

14  cognitive problems. He reported that his wife had to wake him up to take his medications and

15  to do daily self care, as well as drive him to his appointments. He also said he had not

16  recovered from surgery and that his joints were deteriorating. E359. His 2005 medical records

17  increasingly reflected orthopedic and joint pain complaints relating to his hip, shoulder, and low

18  back, for which he was treated with steroid injections, epidurals, and physical therapy. Film

19  studies indicated osteoarthritis and degenerative disc disease, but there was no evidence of

20  rheumatoid arthritis, and plaintiff's range of motion and neurological signs were negative on

21  examination. E305-307.

22       Peter M. Gannon, M.D., specializing in Internal Medicine and Neurology, did somewhat

23  extensive testing of plaintiff relating to both his sleep and pain concerns. There are reports in

24  2003, before the surgeries, as well as in 2005, long after the surgeries. These included:

25       &bull;   MRI of brain, April 16, 2003: Normal. E254.

26       &bull;   Neurological examination, May 8, 2003: Normal. E251.

27

28

-8-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

- EMG of right lower extremity and paraspinous areas, April 11, 2005: Normal. E246.
- Nerve conduction study of right lower extremity: Normal. E245.
- EEG, December 27, 2005: Normal. E238.

Dr. Gannon's December 16, 2005 assessment reflected uncertainty concerning the etiology of plaintiff's self-reported symptoms. E237.

### (2)     Surveillance and in-person interview with investigator.

Plaintiff's activities were observed in surveillance conducted in August, September, and November 2005.[3] On August 7, he was observed for four hours while attending a baseball game, going to a store, and briefly doing yard work. E119-120. On September 21, he left the house by car and returned an hour later. E113-114. On November 6, he was away from home for 5 hours and 40 minutes while he watched his son's baseball game and, during that time, was seen standing, walking, briefly jogging, bending, catching a baseball, and pulling a bag. E096-101.

On March 1, 2006, Hartford Investigator James Budkus met with plaintiff, who emphasized his complaints involving sleepiness and inability to focus or concentrate. However, he also said that he had pain on standing or walking distances of more than a block. Upon viewing the surveillance video, plaintiff indicated that what was shown represented an above average level of functionality for him. E092.

### (3)     Communications with treating physicians.

After that, the file was reviewed by a medical case manager, Jody Wilkins, R.N., who then sent his treating physicians, Drs. Gannon (neurologist), Crooks (orthopedist), and Waters (internist) a letter including the results of the surveillance and a copy of the claimant interview.

---

[3]     The surveillance CDs also are part of the administrative record and have been provided to the court along with the manually filed hard copies of the record. The corresponding investigative reports concerning plaintiff's activities are contained in the record at E093-129.

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

The letter summarized her observations concerning the claim and asked whether they agreed that plaintiff was capable of performing a full time sedentary to light occupation that allowed position changes. Dr. Gannon said yes, and Drs. Crooks and Waters deferred to Dr. Gannon's opinion. E218-230; 4/27/06 K6 Comment, E010. The K6 Comment for April 27, 2006, describes a telephone conversation in which Dr. Waters told Nurse Wilkins that he thought plaintiff's sleepiness seemed to have improved after the surgeries and that plaintiff's self-reported limitations were greater than those observed in the surveillance video. E010.

### (4)    Employability Analysis Report.

On April 28, 2006, an employability analysis was performed based upon the level of functionality affirmed in the letter countersigned by Dr. Gannon and joined by the other two treating physicians. E179-181. The results yielded a list of occupations that plaintiff should have been able to perform based upon his abilities, training, and experience, taking appropriate compensation into account. The list included Chief Bank Examiner, Controller, Investment Analyst, Treasurer, and similar occupations. E179-180.

### e.    Termination of benefits, April 28, 2006.

Based upon the information in the file, The Hartford determined that plaintiff was not disabled from any occupation and so advised plaintiff on April 28, 2006, a day before the end of the own occupation period. E165-172. A detailed explanation of the basis for The Hartford's decision was contained in the letter.

Specifically, the letter noted plaintiff's claim that he suffered from hypersomnolence, constant fatigue, and related problems, as well as orthopedic problems from deteriorating joints that prevented him from, e.g., standing for more than 10 or 15 minutes or walking more than a block before having to get off his feet from pain. E168-169. The letter described videotaped activities that contrasted markedly with his described limitations, including

> walking at a brisk pace, driving, getting in and out of a truck, walking down steps without the use of an available railing, carrying a bag of baseballs in both hands, pulling an athletic bag on wheels, placing most of your weight on each leg, bending at the waist, continuously on your feet for at least 34 minutes at a time, sitting continuously for 34 minutes at a time, and reaching in all directions.

-10-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

E168. The letter also described the nurse-case manager's summary of plaintiff's apparent level of functioning, in which plaintiff's own treating physicians concurred. The letter noted that plaintiff's own physician viewed plaintiff's sleep apnea as having been improved in some measure by corrective surgeries. E170. The letter described plaintiff's education and skills and The Hartford's assessment of positions for which he might be qualified, taking into consideration his physical restrictions. E170-171. The letter then described his appeal rights under ERISA, including a 180-day period for appeal. E171-172.

In its February 11, 2008 order, this court held that The Hartford's eight-page, single-spaced letter of April 28, 2006 satisfied the requirements of 29 C.F.R. 2560.503-1(g) and (h) for the information to be provided in adverse benefit determinations, including "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." Order at 10, EA710.

### 3.    The October 3, 2006 letter from Julian Baum, Esq., to The Hartford.

On October 3, 2006, nearly at the end of the 180-day period, plaintiff's current attorney, Julian Baum, Esq., wrote to The Hartford stating that plaintiff wished to appeal. He asked for the file and other documents. E162. The Hartford sent him the file and waited for further communications, but none was forthcoming.[4] The period for appeal was extended until December, and Mr. Baum was so notified, but nothing further was received. The Hartford therefore closed its file. E001-002.

### D.    The Filing of This Lawsuit and the Exhaustion Motion.

The complaint in this action was filed on September 12, 2007. After the action was

---

[4]    Mr. Baum stated under oath to this court at the February 7, 2008 hearing on defendants' exhaustion motion that he sent a follow-up inquiry in November. As stated in the declarations of Timothy Scully and Karen Swanson submitted in support of that motion, The Hartford has no record of having received it. This factual dispute is not material to the instant motion, inasmuch as the court resolved all matters related to it by remanding the claim to The Hartford to conduct its appeal review.

-11-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1   filed, plaintiff proffered to defense counsel a July 7, 2007 report authored by Thomas Lewis,

2   M.D., which, like the November 2007 follow-up inquiry, had not been received by The

3   Hartford[5] and which in any event had been generated well after the file was closed. In the

4   report, Dr. Lewis, a psychiatrist, stated that he had examined plaintiff and believed plaintiff to

5   be disabled from his sleep-related problems. EA688-700.

6         Because it did not appear to The Hartford that plaintiff had exhausted his judicial

7   remedies, defendants filed an early motion for summary judgment based upon the exhaustion

8   defense. Defendants asked in the alternative for the opportunity to conduct an appeal review if

9   the court allowed plaintiff to go forward with the lawsuit. The court denied the motion for

10   summary judgment on the ground that, based upon the October 3, 2006 letter, The Hartford

11   should have gone forward with a review of the claim on appeal even in the absence of further

12   information instead of closing the file. In remanding the matter to The Hartford to conduct a

13   further review, the court restricted the material to be considered to the administrative record as

14   it existed at the time of file closure, as well as Dr. Lewis's report. EA701-716 at EA716,

15   February 11, 2008 Order at 16.

16   **E.**     **The Appeal Review on Remand.**

17         **1.**     **Dr. Filderman's report.**

18         Upon remand, the file was transferred to the Appeals Unit and was assigned to Senior

19   Appeal Specialist Christopher Davis for review. Mr. Davis himself reviewed the file and then

20   referred the medical records (from EA721 to EA986) to third-party vendor University Disability

21   Consortium (UDC) to have a sleep specialist review the file and report on plaintiff's

22   functionality as of April 2006 and continuing to the date of review. E717-720. UDC assigned

23   the review to Andrew Filderman, M.D., who specializes in sleep medicine and pulmonary

24   medicine. Dr. Filderman reviewed the medical records in the file as well as Dr. Lewis's report,

25   and he then spoke with Dr. Lewis. His two-part report (see Davis Declaration, ¶ 5) is found at

26

27   ―――――――――――――――

[5]   This dispute also is not material in light of the court's order requiring The Hartford to

28   consider Dr. Lewis's report in its appeal review on remand.

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1  E987 to E996.

2      Dr. Filderman's record review contained a coherent narrative of plaintiff's medical

3  history with respect to his sleep issues, noting that plaintiff had reported excessive daytime

4  sleepiness since childhood that worsened after an automobile accident in 1998.  EA988.  He

5  described the surgical and pharmacological interventions undertaken to improve his condition

6  and the lack of positive findings on post-surgery testing of various kinds.  EA988-989.

7      Dr. Filderman also reviewed and summarized Dr. Lewis's report and spoke with Dr.

8  Lewis for 20 minutes by telephone.  EA992-996.  Dr. Filderman opined that Dr. Lewis's

9  conclusions were not fully supported by the medical record.  For example, Dr. Lewis's view

10  that the absence of slow-wave sleep might account for plaintiff's symptoms did not take into

11  account the common problem that sleep architecture often changes in sleep laboratories.

12  EA994.  Similarly, the source of Dr. Lewis's observations concerning plaintiff's "repeated

13  arousals" during nighttime sleep was unclear, in that the sleep study did not indicate any overall

14  "arousal index."  Dr. Filderman's report stated that these arousals, together with the mild sleep

15  apnea indicated by the records, would not account for the level of sleepiness plaintiff reported.

16  EA994-995.

17      Dr. Filderman agreed with Dr. Lewis's observation that additional testing by post-

18  surgery sleep studies would have been helpful, but these were not done.  EA995.  If a condition

19  other than sleep apnea were operating to cause plaintiff's reported symptoms, the evidence for

20  such a condition was not contained in the file.  EA995.  Overall, Dr. Filderman concluded that

21  plaintiff should be able to work full time, perhaps with periods of rest due to his mild sleepiness.

22  EA995.

23      **2.    The decision upholding termination of benefits, June 5, 2008.**

24      On June 5, 2008, The Hartford upheld its claim determination and offered an extensive

25  description of the history of the claim and of the reasoning behind the appeal decision.  EA997

26  to EA1006.  The letter pointed out that the question for determination on appeal was whether

27  plaintiff satisfied the "any occupation" definition of disability that became applicable at the end

28

-13-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1   of April 2006.  Hence, the relevance of Dr. Lewis's opinion, given that his examination of

2   plaintiff fourteen months after the termination of benefits, lay in his opinions regarding the

3   medical records available for review.  For the same reason, an independent medical examination

4   to be conducted during the review on remand, as suggested by plaintiff, was not relevant to his

5   condition at the time of termination of benefits.  The Hartford therefore opted for an

6   independent medical review of the medical records.  EA1000. Mr. Davis's June 5, 2008 letter

7   then described in detail Dr. Filderman's observations and conclusions, including the summary

8   of his conversation with Dr. Lewis and his conclusions regarding Dr. Lewis's opinions and

9   findings.  EA1000-1001.  The Hartford concluded that there was insufficient corroboration in

10  the file for the magnitude of the cognitive and sleepiness symptoms that plaintiff reported, and

11  that plaintiff did not appear to be prevented from performing the occupations identified in the

12  Employability Analysis Report.  EA1005-1006.

## SUMMARY OF ARGUMENTS

14        By virtue of the discretionary language in the policy and the Supreme Court's recent

15  decision in *Metropolitan Life Insurance Co. v. Glenn,* 2008 U.S. LEXIS 5030 (June 19, 2008),

16  The Hartford's claim determination is to be reviewed for abuse of discretion.  The

17  documentation of The Hartford's thorough review of the claim demonstrates that the formal

18  conflict of interest that The Hartford has by virtue of its status as both claim evaluator and payor

19  did not affect its determination of plaintiff's claim.  Abundant support for The Hartford's

20  decision appears in the file, including by plaintiff's own treating physicians' opinions at the

21  initial level of review and by an independent specialist in sleep medicine on appeal.  The record

22  reflects that plaintiff has suffered from excessive daytime sleepiness since childhood, and yet he

23  served at high levels of financial management for years with this condition.  Speculations as to

24  the extent and causes of this condition were uncorroborated by the record, which was

25  thoroughly reviewed and explicated in making the final decision.  The Hartford did not abuse its

26  discretion in upholding the termination of plaintiff's benefits.

27

28

359709.1

1

## LEGAL DISCUSSION

2

## I

3

## THE HARTFORD DID NOT ABUSE ITS DISCRETION IN DENYING THE CLAIM

4

**A.    The Claim Determination Must Be Reviewed for Abuse of Discretion.**

5        The court will look to the text of the ERISA documents to decide the standard of review

6 for denial of benefits. *Walker v. American Home Shield Long Term Disability Plan,* 180 F.3d

7 1065, 1068 (9th Cir. 1999).  The policy here explicitly accords discretionary authority to The

8 Hartford to determine eligibility for benefits: **"Who interprets policy terms and conditions?**

9 We have full discretion and authority to determine eligibility for benefits and to construe and

10 interpret all terms and provisions of the Group Insurance Policy."

11        When an ERISA plan vests the claim administrator with such discretionary authority, the

12 administrator's decision is reviewed under the deferential "arbitrary and capricious" or "abuse of

13 discretion" standard. *Firestone  Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948,

14 103 L.Ed.2d 80 (1989); *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1090 (9th Cir. 1999).

15 Substantial deference has been accorded to the administrator under this standard. *See, e.g., Eley*

16 *v. Boeing Co.,* 945 F.2d 276, 279 (9th Cir. 1991) (not abuse of discretion to deny benefits despite

17 expert evidence showing that a certain procedure was diagnostic and therefore was covered by

18 the plan); *Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1285 (9th Cir. 1990) (not

19 arbitrary and capricious to deny benefits without considering a finding by the Social Security

20 Administration that the plaintiff was totally disabled).  Under the abuse of discretion standard of

21 review, the reasonableness of the decision, and not its correctness, will determine whether it will

22 be upheld on judicial review.

23        In recent years, the courts in ERISA cases have undertaken an analysis of whether claim

24 determinations adverse to the claimants are subject to more stringent review based upon a

25 conflict of interest on the part of the claim administrator.  This analysis is to be undertaken when,

26 as here, the entity that made a claim determination adverse to the claimant also would have been

27 responsible for paying the benefits: i.e., a formal or "structural" conflict of interest exists.  In

28

-15-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1    *Abatie v. Alta Bates Health & Life Insurance Co.*, 458 F.3d 955, 965 (9th Cir. 2006), the Ninth

2    Circuit held that "[a]buse of discretion review applies to a discretion-granting plan even if the

3    administrator has a conflict of interest." The court stated, "We read *Firestone* to require abuse of

4    discretion review whenever an ERISA plan grants discretion to the plan administrator, but a

5    review informed by the nature, extent, and effect on the decision-making process of any conflict

6    of interest that may appear in the record." *Id.* at 967.

7         In its latest ERISA decision, *Metropolitan Life Insurance Co. v. Glenn,* 2008 U.S. LEXIS

8    5030 (June 19, 2008), the United States Supreme Court reaffirmed that where the plan provides

9    the administrator with discretionary authority to determine eligibility for benefits, a deferential

10   standard of review is appropriate. The existence of a conflict of interest, such as occurs when the

11   administrator that makes the decision also is the entity that will pay the claim, *id.* at *12, is

12   simply "weighed as a factor," along with other case-specific relevant factors, in determining

13   whether the claim fiduciary abused its discretion in making its determination. *Id.* at *11-*12.

14   The court did not believe it "necessary or desirable for courts to create special burden-of-proof

15   rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor

16   conflict," *id.* at 20, instead favoring a case-by-case approach, *id.* at *20-21.

17         Thus, the conflict of interest does not change the standard of review itself, but instead

18   causes the court to consider whether the conflict of interest influenced the decision. Here,

19   nothing in the administrative record points to any justification for viewing The Hartford's claim

20   decision with skepticism as a result of its dual role.

21   **B.    The Hartford Properly Exercised Its Discretion in Reaching Its Decision.**

22         Procedurally, The Hartford did everything the regulations and case law required it to do

23   to determine whether plaintiff satisfied the "any occupation" definition of disability. The

24   Hartford regularly obtained plaintiff's medical records, consulted with his physicians and relied

25   upon their own assessment of plaintiff's work capacity, interviewed plaintiff, independently

26   observed his activities on three separate occasions, had a different claim reviewer and an

27   appropriate medical specialist review the claim on appeal, and provided plaintiff with a

28

-16-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1    comprehensive explanation of the reasons that the decision was made and then upheld on appeal.

2    Substantively, at the initial level of review, plaintiff's own physicians advised The

3    Hartford that plaintiff could work full time in a sedentary to light occupation. Dr. Waters told

4    The Hartford that plaintiff's sleep-related complaints had appeared to improve after the

5    surgeries, and the record establishes that plaintiff had had excessive sleepiness virtually all his

6    life without its impacting his ability to serve in high-level financial roles. Surveillance

7    highlighted significant discrepancies between his reported physical limitations and his actual

8    limitations. An Employment Analysis revealed a number of appropriate occupations for

9    plaintiff, and the information used to create this profile came directly from plaintiff and his own

10   treating physicians.

11   On review on appeal, Dr. Filderman and the Hartford's Senior Appeals Specialist

12   acknowledged plaintiff's reported sleep-related symptoms, but noted also that the medical

13   records relating to the time of termination of benefits did not contain medical evidence, such as

14   test results, to corroborate these reported symptoms. Unlike conditions such as fibromyalgia or

15   chronic pain, which rely largely on self-reported symptoms for their diagnoses, the conditions of

16   which plaintiff complained could have been assessed formally. Although such assessments were

17   done near the time of plaintiff's corrective surgeries, there is a notable absence of the kind of

18   follow-up that would have been expected had the corrective surgeries not improved his

19   condition, or had his symptoms actually worsened after the surgeries. Dr. Lewis's examination

20   more than a year after the relevant time period could not establish plaintiff's condition as of

21   April 2006. Despite adequate notice to plaintiff – as held by this court in its previous order – of

22   the deficits in the support for his claim, plaintiff provided nothing at all to support his appeal

23   except his attorney's letter stating that he wished to appeal.

24   The burden of proof is on plaintiff to demonstrate his entitlement to benefits, and he

25   cannot meet it. *Sabatino v. Liberty Life Ins. Co.*, 286 F.Supp.2d 1222, 1232 (N.D. Cal. 2003).

26   The record establishes that plaintiff has suffered from excessive sleepiness since childhood, and

27   that he worked at high-level jobs for many years – including after his symptoms reportedly

28

-17-

359709.1

1  worsened after an accident in 1998.  The Hartford did not abuse its discretion in finding that

2  plaintiff did not satisfy the "any occupation" definition of disability.[6]

3                                              II

4            **AS THE PLAN IS SUED ONLY AS A NECESSARY PARTY,**

5                  **IT IS ENTITLED TO JUDGMENT IN ITS FAVOR**

6            The complaint does not allege any conduct on the part of the Plan that is separate from

7  the denial of benefits under the policy issued and administered by The Hartford, the real party in

8  interest.  Certain Ninth Circuit cases simply have held that the Plan must be named as a

9  defendant in actions such as this.  *See Ford v. MCI Communs. Corp. Health & Welfare Plan,*

10  399 F.3d 1076, 1081 (9th Cir. 2005) (the plan is the proper defendant in a suit to recover

11  benefits).  In the absence of any independent misconduct alleged to have been committed by the

12  Plan, the Plan requests that judgment be entered in its favor.

13

14                                       **CONCLUSION**

15            Judgment in favor of defendants is appropriate based upon the lack of any evidence that

16  The Hartford abused its discretion in reaching its decision.  There is no independent basis for

17  liability against the Plan.

18

19

20

21

22

_____

23  [6]     Defendants anticipate that plaintiff will assert *Glenn* in support of a position that The
24  Hartford should have considered the Social Security Administration's finding that plaintiff was
    disabled under its statutory scheme.  *Glenn* does not support this premise, at least retroactively.
25  In the Sixth Circuit courts, from which *Glenn* arose, the failure to credit SSA disability
    determinations had been held to constitute an abuse of discretion.  *See Glenn v. MetLife,* 461
26  F.3d 660, 666-68 (6th Cir. 2006).  In contrast, the rule in the Ninth Circuit long has been that it is
    not an abuse of discretion for the claim administrator not to consider Social Security
27  determinations.  See *Madden v. ITT Long Term Disability Plan,* 914 F.2d 1279, 1285 (9th Cir.
28  1990)

                                              -18-

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1

1        Defendants therefore respectfully request that judgment be entered in their favor or, in

2    the alternative, that this court grant summary adjudication of the issues set forth in their notice

3    of motion.

4

5                             WILSON, ELSER, MOSKOWITZ,
                              EDELMAN & DICKER, LLP

6

7    Date: June 26, 2008                By_____/s/Laura E. Fannon_____

8                                 Laura E. Fannon
                              Attorneys for Defendants

9                       HARTFORD LIFE AND ACCIDENT
                              INSURANCE COMPANY and LONG-

10                  TERM DISABILITY AND LIFE PLAN FOR
                  EMPLOYEES OF MINNESOTA METHANE LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C07-04696 WHA ADR

359709.1